ALLSTATE INSURANCE COMPANY, Plaintiff,

v.

Steven H. FOSTER; Roberta Foster; Kathryn Rush, a minor; Barbara Rush and Marvin Rush as co-guardians ad litem of said minor; Barbara Rush, individually; and Marvin Rush, individually, Defendants.

Steven H. FOSTER and Roberta Foster, Counterclaimants,

v.

ALLSTATE INSURANCE COMPANY, Counterdefendant.

No. CV–N–86–514–HDM.

United States District Court, D. Nevada.

Aug. 11, 1988.

Michael Iglesias and Michael Rosenauer, Vargas & Bartlett, Reno, Nev., for plaintiff.

Kent Robison, Robison, Lyle, Belaustegui & Robb, Vivian Lynch, Hamilton & Lynch, Reno, Nev., for defendants.

## ORDER

McKIBBEN, District Judge.

Plaintiff Allstate Insurance Company filed this declaratory judgment action pursuant to 28 U.S.C. § 2201 and Fed.R.Civ.P. 57. Allstate seeks a declaration of the rights of the parties under the provisions of a Deluxe Mobilehome Policy, form U10119, under which Allstate provided liability insurance coverage to Steven H. Foster and Roberta Foster.

In 1986, Steven Foster pled guilty to and was convicted of lewdness with a minor (Nev.Rev.Stat. § 201.230). In 1987 the Rushes, as co-guardians ad litem for their daughter Kathryn, sued Steven Foster and his wife Roberta Foster in the Second Judicial District Court of the State of Nevada and in and for the County of Washoe for the physical and mental harm incurred by Kathryn from Steven's "sexual molestation and assault."

The state civil complaint alleges Steven did "sexually assault and molest Kathryn Rush in approximately April and May of 1985." It further alleges Roberta, "at the time the sexual assaults and molestations occurred, knew of her husband's ... sexual assaults and molestations on Kathryn ... [and] breached [a duty to Kathryn] by negligently failing to warn, disclose or otherwise protect Kathryn Rush from the sexual assaults and molestations while the child was visiting the defendant's home."

Allstate maintains it has no duty to defend Steven or Roberta as the insurance coverage expressly excludes coverage under Part 1, coverage X, and Part 2, coverage Y, for bodily injury or property damage which may reasonably be expected to result from the intentional or criminal acts of an insured person.

The Rushes seek damages for both the physical and mental harm incurred by Kathryn. The policy provides coverage for "all sums arising from the same loss which an insured person becomes legally obligated to pay as damages because of bodily injury or property damage covered by this part of the policy." The policy defines "bodily injury" to mean "bodily injury, sickness or disease, including resulting death, care and loss of services." The insurance policy expressly excludes coverage for "any bodily injury or property damage which may reasonably be expected to result from the intentional or criminal acts of an insured person or which is in fact intended by an insured person." Allstate Mobilehome Policy, Parts 1 and 2, Exclusions, section 1 (Exhibit A to the complaint at 17 and 19).

The Ninth Circuit has held that "bodily injury" in an insurance contract applies consistently throughout the policy, both in the coverage and exclusion sections. *State Farm Fire and Casualty Co. v. Pickard*, 849 F.2d 1220 (9th Cir.1988) (declaratory relief action by insurance company which had insured a person convicted of statutory sexual seduction of stepdaughter; the stepdaughter sued the insured in state court for emotional distress). In *Pickard*, the Ninth Circuit stated that if "bodily injury" did not include emotional distress, there was no coverage and, alternatively, if "bodily injury" included emotional distress, the exclusion clause denied coverage. Since the court concludes that neither Steven Foster nor Roberta Foster is covered by the policy for the liability alleged by the Rushes, it is unnecessary to consider whether the term "bodily injury" includes emotional distress.

*Coverage of Steven Foster.*

The insurance policy expressly excludes coverage for "any bodily injury or property damage which may reasonably be expected to result from the intentional or criminal acts of an insured person or which is in fact intended by an insured person." There is no factual dispute that the acts alleged to have caused harm to Kathryn were criminal acts. The court must decide whether the injury to Kathryn Rush was one which reasonably could be expected to result from the acts of Steven Foster.

In diversity cases, the court is bound to apply the law of the state on substantive matters such as contract interpretation. *Dempsey v. Auto Owners Ins. Co.,* 717 F.2d 556, 559 (11th Cir.1983); *Strassberg v. New England Mutual Life Ins. Co.,* 575 F.2d 1262 (9th Cir.1978). There is no reported Nevada case law construing the exclusion clause at issue in this case. In the absence of controlling forum state law, a federal court sitting in diversity must use its own best judgment in predicting how the state's highest court would decide the substantive issue. *Dimidowich v. Bell & Howell,* 803 F.2d 1473, 1482 (9th Cir.1986); *Takahashi v. Loomis Armored Car Service,* 625 F.2d 314, 316 (9th Cir.1980). In so doing, a federal court may be aided by looking to well-reasoned decisions from other jurisdictions. *Takahashi,* 625 F.2d at 316.

The phrase "damage which may reasonably be expected to result" plainly and unambiguously refers to the expectations of a reasonable person. A Michigan court interpreting an identical insurance clause to the one before this court held that an insured's "reasonable expectation" of coverage must be determined by an objective standard. *Allstate v. Freeman,* 160 Mich. App. 349, 408 N.W.2d 153 (1987) *appeal granted* March 22, 1988. In *Freeman,* an insured person convicted of "discharge of a firearm intentionally but without malice" maintained she did not intend to injure the victim. The *Freeman* court found the insurance company had no duty to defend the insured in a tort suit or to pay her damages. *Freeman* held some acts are so nearly certain to produce injury that intent or expectation to injure should be inferred as a matter of law. *Id.* 408 N.W.2d at 156. The insured had fired a handgun in the direction of the victim who was only three to six feet away.

The well-reasoned decisions of other jurisdictions support a conclusion that intent to harm may be inferred from sexual contact with a minor as a matter of law, regardless of the insured's subjective intent. *Rodriguez v. Williams,* 107 Wash.2d 381, 729 P.2d 627, 630 (1986) (incest); *Horace Mann Ins. Co. v. Independent School District,* 355 N.W.2d 413 (Minn.1984); *Fireman's Fund Ins. Co. v. Hill,* 314 N.W.2d 834 (Minn.1982); *Grange Ins. Ass'n v. Authier,* 45 Wash.App. 383, 725 P.2d 642 (1986); *Rodriquez v. Williams,* 42 Wash. App. 633, 713 P.2d 135 (1986); *Illinois Farmers Ins. Co. v. Judith G.,* 379 N.W.2d 638 (Minn.App.1986); *Linebaugh v. Berdish,* 144 Mich.App. 750, 376 N.W.2d 400 (1985); *contra, State Auto Mutual Ins. Co. v. McIntyre,* 652 F.Supp. 1177 (N.D. Ala.1987); *MacKinnon v. Hanover Ins. Co.,* 124 N.H. 456, 471 A.2d 1166 (1984).

Implicit in the determination that children must be protected from such acts is a determination that at least some harm is inherent in and inevitably results from those acts. *Grange,* 725 P.2d at 644; *Allstate Ins. Co. v. Kim W.,* 160 Cal.App.3d 326, 206 Cal.Rptr. 609 (1984); *see Vermont Mutual Ins. Co. v. Malcolm,* 128 N.H. 521, 517 A.2d 800 (1986) (sexual abuse of a minor boy). By enacting Nev.Rev.Stat. § 201.230, it may reasonably be inferred that the Nevada legislature sought to protect minors from "lewd" acts.

On the basis of these well-reasoned decisions of other jurisdictions and the reasonable inference drawn from the Nevada criminal statute punishing "lewd" acts with minors, the court concludes the Nevada Supreme Court would decide that intent to harm may be inferred as a matter of law from "lewdness with a minor." Any harm resulting to Kathryn Rush from the criminal acts of Steven Foster is as a matter of law excluded from coverage under the Allstate Mobilehome Policy.

*Coverage of Roberta Foster.*

The Rushes allege in their state civil action that Roberta Foster was negligent since she knew of her husband's sexual assaults and molestations on Kathryn and failed to warn, disclose or otherwise protect Kathryn while the child visited the Foster's home.

The policy provides that coverage is excluded for "bodily injury ... which may reasonably be expected to result from the intentional or criminal acts of *an* insured person." (Emphasis added). Allstate maintains this provision excludes coverage to all insureds if the harm arises out of the excluded conduct of any one insured. The Rushes maintain coverage is excluded only as to the insured who commits the criminal or intentional act.

"A" or "an" is an indefinite article often used in the sense of "any" and applied to more than one individual object; whereas "the" is an article which particularizes the subject spoken of. *Black's Law Dictionary,* 1, 1324 (5th ed. 1979); *cf. American States Ins. Co. v. Borbor,* 826 F.2d 888, 894 (9th Cir.1987) (use of "any" insured would have unambiguously excluded coverage of other insureds); *Western Casualty & Surety Co. v. Aponaug Mfg. Co.,* 197 F.2d 673, 674 (5th Cir.1952) (use of "the" insured would not affect coverage of other insureds); *Armstrong v. Security Ins. Group,* 288 So.2d 134 (Ala.1973) (exclusion clause with term "the" insured is without effect as to other persons insured); *Pawtucket Mutual Ins. Co. v. Lebrecht,* 104 N.H. 465, 190 A.2d 420 (1963) (use of "the" and "an" insured in same policy indicates an intent to cover different situations; "the" insured refers to definite, specific insured who is seeking coverage); *Arenson v. Nat'l Automobile and Casualty Ins. Co.,* 45 Cal.2d 81, 286 P.2d 816 (1955) (use of "the" insured in exclusion clause did not preclude recovery of other insureds); *Travelers Ins. Co. v. Blanchard,* 431 So.2d 913 (La.App.1983) (use of "an" insured excluded coverage for all insureds); *Unigard Mutual Ins. Co. v. Argonaut Ins. Co.,* 20 Wash.App. 261, 579 P.2d 1015 (1978) (coverage and exclusion defined in terms of "the" insured create separate obligations to several insureds).

Since the Allstate Mobilehome Policy excludes coverage for harm resulting from the intentional or criminal "acts of *an* insured person," the insurance policy excludes coverage to any other insureds, such as Roberta Foster, for liability arising from the harm which is directly attributable to the intentional or criminal act.

Accordingly, the court finds Allstate has no legal obligation to defend or indemnify Steven Foster and Roberta Foster for liability to Kathryn Rush or her parents as co-guardians ad litem for any bodily harm and emotional harm incurred by Kathryn Rush which was caused by the criminal acts of lewdness by Steven Foster during the months of April and May 1985.

The motion of Allstate Insurance Company for summary judgment is GRANTED.

IT IS SO ORDERED.