VANGUARD INSURANCE COMPANY v McKINNEY

Docket No. 116512. Submitted April 13, 1990, at Detroit. Decided August 6, 1990.

Edward Ellis, Jr., while on parole from a prior prison sentence for manslaughter, shot and killed Rozalyn Marshall. One of the conditions of the parole was that Edward Ellis, Jr., reside with his father, Edward Ellis, Sr. The murder was committed by the younger Ellis in his father's automobile, and the younger Ellis used a firearm owned by his father to commit the murder. Katheryn McKinney, as personal representative of the estate of Rozalyn Marshall, commenced an action for damages against Edward Ellis, Sr., and others. The claim against the elder Ellis was based upon allegations that he had negligently failed to adequately monitor, control or supervise his son, had negligently entrusted the automobile to his son, had negligently allowed his son access to a firearm and had negligently failed to apprise authorities of the situation. Vanguard Insurance Company, which had issued a homeowners policy to the elder Ellis, brought a declaratory judgment action in Wayne Circuit Court, naming McKinney, Ellis and the other defendants in McKinney's action as defendants and seeking a declaration that it had no duty to defend the elder Ellis. Vanguard moved for summary disposition, arguing that coverage under the policy was precluded because of an exclusion which provided that the policy did not apply "to bodily injury or property damage which is either expected or intended from the standpoint of the Insured." The trial court, Kathleen I. McDonald, J., granted Vanguard's motion. McKinney appealed.

The Court of Appeals *held:*

The use of the definite article "the" restricts the exclusion of coverage to a claim brought against the particular person who undertook the specific intentional act. Accordingly, while coverage would be precluded with respect to a claim brought against Edward Ellis, Jr., an included insured, coverage is not pre-

REFERENCES

Am Jur 2d, Insurance §§ 1405 et seq.

See the Index to Annotations under Insurance and Insurance Companies.

cluded with respect to this claim against Edward Ellis, Sr., the named insured, since it is not alleged that the elder Ellis expected or intended the act of his son, the claim against him being based upon allegations of negligence.

Reversed and remanded.

INSURANCE — HOMEOWNERS INSURANCE — DUTY TO DEFEND — INTENTIONAL TORTS.

An insurer is not relieved of its duty to defend the named insured on a homeowners policy where the named insured is being sued on a claim that the named insured negligently allowed his son who was a resident in his household the means by which the son murdered the plaintiff's decedent where the insurance policy precluded coverage for "bodily injury or property damage which is either expected or intended from the standpoint of the insured" where it is not alleged that the named insured expected or intended the bodily injury inflicted by the son on the deceased.

*Zamplas, Paskin, Nagi, Baxter, Johnson & Walker, P.C.* (by *Dennis Zamplas* and *Christine G. Marakas*), for plaintiff.

*Rader & Eisenberg, P.C.* (by *Stuart Eisenberg*), for defendant.

Before: SAWYER, P.J., and MICHAEL J. KELLY and R. B. BURNS,* JJ.

SAWYER, P.J. Defendant McKinney appeals from an order of the circuit court granting summary disposition to plaintiff on plaintiff's declaratory judgment action seeking a determination that it had no duty to defend or indemnify its insured, defendant Edward Ellis, Sr., in an underlying action brought by defendant McKinney against defendant Ellis and others. We reverse.

This declaratory judgment action arises out of the October 16, 1985, killing of defendant McKinney's decedent, Rozalyn Marshall, by defendant

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

Ellis' son, Edward Ellis, Jr. Ellis, Jr., had been previously convicted, in 1979, of second-degree murder in the slaying of one Cynthia Graves and had been sentenced to serve a term of twenty to forty years in prison. That conviction was reversed by this Court. *People v Ellis,* unpublished opinion per curiam of the Court of Appeals, decided August 19, 1982 (Docket No. 54676). Ultimately, defendant was sentenced to serve a prison term of from three to fifteen years on a manslaughter conviction plus a consecutive two-year sentence on a felony-firearm conviction, such sentencing occurring on January 13, 1983. On May 12, 1983, Ellis, Jr., was paroled following a majority vote of the parole board panel assigned to review his case. While on parole, Ellis, Jr., violated the conditions of his parole by committing an aggravated assault on the victim in the instant case, Rozalyn Marshall. Ellis, Jr., was returned to prison, but was again paroled on September 16, 1985.[1] A month later, on October 16, 1985, Ellis, Jr., fatally shot Rozalyn Marshall in his father's car with a firearm owned by his father. Ellis, Jr., was subsequently convicted of second-degree murder and felony-firearm arising from that shooting and was sentenced to serve a term of forty to one hundred years in prison. His convictions have been affirmed by this Court. See *People v Ellis,* unpublished memorandum opinion of the Court of Appeals, decided September 4, 1987 (Docket No. 92790).

Defendant McKinney's complaint against Edward Ellis, Sr., alleged that Ellis, Sr., was negligent in failing to adequately monitor, control or supervise Ellis, Jr., while on parole despite the fact that one of the conditions of Ellis, Jr.'s parole

---

[1] Defendants Richardson and Patten were members of the parole board who voted to re-parole Ellis, Jr., in 1985, with such vote being the basis for the action against them in the underlying lawsuit.

was that he reside with Ellis, Sr., that Ellis, Sr., negligently entrusted the automobile to Ellis, Jr., despite his knowledge that Ellis, Jr., was unfit to safely operate the motor vehicle, that Ellis, Sr., negligently allowed Ellis, Jr., to gain access to a loaded firearm, despite his knowledge of Ellis, Jr.'s dangerous propensity to the decedent and others, that Ellis, Sr., was negligent in failing to provide transportation and to remove all firearms from his home before Ellis, Jr., was paroled, that Ellis, Sr., was negligent in failing to notify Ellis, Jr.'s parole officer that Ellis, Jr., was seeing the decedent and was drinking, and that Ellis, Sr., otherwise was negligent in failing to supervise Ellis, Jr., as had been promised prior to the approval of the parole.

Ellis, Sr., tendered the defense of the underlying action to plaintiff under Ellis, Sr.'s homeowner's policy. Plaintiff denies a duty to defend and indemnify on the basis of an exclusionary provision in the homeowner's policy under the coverage for personal liability which provides that the policy does not apply "to bodily injury or property damage which is either expected or intended from the standpoint of *the* Insured." (Emphasis added.)

On appeal, the parties present two questions for our determination, namely: (1) whether the underlying action is correctly categorized as a case involving the negligent entrustment of a weapon by Ellis, Sr., to Ellis, Jr.; and (2) even if the case is so categorized, whether plaintiff nevertheless has a duty to defend and indemnify Ellis, Sr. As to the first issue, defendant argues that the underlying action involves issues other than negligent entrustment, while plaintiff argues that the underlying action is nothing more than an action alleging negligent entrustment of the weapon to Ellis, Jr., by Ellis, Sr., and, therefore, Ellis, Sr.'s liability, if any, is derivative of Ellis, Jr.'s intentional conduct,

thus precluding coverage under the "expected or intended" language of the insurance policy. However, since we agree with defendant on the second issue, whether plaintiff would nevertheless have a duty to defend and indemnify, we need not resolve the first issue, whether this case may be properly categorized as a negligent entrustment of a weapon case.

There is no allegation in this matter that Ellis, Sr., either intended or expected his son to take the life of defendant's decedent. Rather, any liability by Ellis, Sr., is based upon his allegedly negligent conduct, be it negligent entrustment of the murder weapon to his son or other allegedly negligent conduct arising from a failure to properly supervise his son while on parole. Thus, the question to be resolved is whether the intentional conduct of Ellis, Jr., who presumably intended or expected the death of defendant's decedent,[2] relieves plaintiff of any duty to defend or indemnify Ellis, Sr. The trial court concluded that it did. We disagree.

The essence of plaintiff's argument is that, since Ellis, Jr., was an additional insured under the policy by reason of his residing in the same household as Ellis, Sr., and since the death of defendant's decedent was the intended or expected result of intentional conduct by Ellis, Jr., plaintiff owes no duty under the above-quoted exclusionary clause of the insurance policy to defend or indemnify *any* named insured, including Ellis, Sr. Defendant argues that the exclusionary language referring to damage which is either expected or intended from the standpoint of "*the* Insured" refers only to the specific insured who engages in the

---

[2] Of course, the issue whether Ellis, Jr., did intend or expect this result is not before us. However, for purposes of this appeal, particularly in light of the fact that Ellis, Jr., was convicted for the murder of defendant's decedent, we shall assume that the decedent's death was expected or intended from the viewpoint of Ellis, Jr.

conduct resulting in the injury and does not affect the status of any other named insured. We agree with defendant.

We conclude that the case at bar is controlled by the Supreme Court's decision in *Allstate Ins Co v Freeman,* 432 Mich 656; 443 NW2d 734 (1989).[3] *Freeman* involved facts similar to the case at bar. Specifically, Alonda Freeman shot one Mary Helen Kelly, a neighbor. Kelly brought an action for assault and battery against Alonda Freeman and her husband, Marshall. The insurer then brought a declaratory judgment action seeking a determination that it did not have a duty to defend or indemnify the Freemans on the basis of an intentional act exclusion in the Freemans' homeowner's policy. The Freemans' homeowner's policy contained an exclusionary clause similar to the one in the case at bar, but with crucial differences. Specifically, the policy in *Freeman* provided as follows:

> Exclusions—Losses We Do Not Cover
> 1. We do not cover any bodily injury or property damage which *may reasonably be expected* to result from the intentional or criminal acts of an insured person or which is in fact intended by *an* insured person. [*Freeman, supra* at 685. Emphasis changed.]

The crucial distinction between the *Freeman* policy and the policy in the case at bar is that the *Freeman* policy refers to "an" insured, while the Ellis policy refers to "the" insured. While plaintiff dismisses this distinction as being irrelevant se-

---

[3] It should be noted that Chief Justice RILEY's opinion in *Freeman* did not receive the support of a majority of the justices as to that portion of the opinion dealing with the companion case of *Metropolitan Property & Liability Ins Co v DiCicco,* however, a majority of the justices did endorse Chief Justice RILEY's reasoning as to *Freeman* itself. It is that portion of the Chief Justice's opinion upon which we rely.

mantics, we conclude that the distinction is dispositive. In *Freeman,* the Supreme Court concluded that the exclusionary language of the policy referring to "an insured" unambiguously referred to all or any insured under the policy and, therefore, the intentional or criminal acts of any insured resulting in injuries that were the natural, foreseeable, expected and anticipated result of the intentional acts precluded coverage under the policy as to all of the insureds, including Marshall Freeman. *Freeman, supra* at 700.

In reaching this decision, the Supreme Court discussed the distinctions between "an insured" and "the insured":

> Marshall Freeman also contends that the exclusion is ambiguous as applied to him because "an insured" could mean either "that insured," "the insured," or "any insured." Whereas, plaintiff contends that "an insured" means "any insured." The policy exclusion provides, in pertinent part: "[w]e do not cover any bodily injury or property damage which may reasonably be expected to result from the intentional or criminal acts of an insured person . . . ." Any ambiguity must be construed in favor of the insured. Thus, we agree that if "an insured" is ambiguous, then Allstate must defend Marshall Freeman because *"the insured" or "that insured" would refer to criminal or intentional acts of that particular insured, and in this case, Alonda Freeman. American States Ins Co v Borbor,* 826 F2d 888, 894 (CA 9, 1987); *Western Casualty & Surety Co v Aponaug Mfg Co,* 197 F2d 673, 674 (CA 5, 1952); *Arenson v Nat'l Automobile & Casualty Ins Co,* 45 Cal 2d 81; 286 P2d 816 (1955); *Unigard Mutual Ins Co* [v *Spokane School Dist,* 20 Wash App 261; 579 P2d 1015 (1978)].
>
> The crux of Marshall Freeman's argument adopts the reasoning asserted by the dissenting opinion in the Court of Appeals decision. [*Allstate Ins Co v Freeman,* 160 Mich App 349, 361; 408

NW2d 153 (1987)]. Although Marshall Freeman cites no case law directly on point, he argues that, in the instant case, we should adopt several rules of insurance contract construction which this Court has applied in the context of an automobile accident policy. *Powers* [v *DAIIE,* 427 Mich 602, 623-631; 398 NW2d 411 (1986)]. While we agree that these principles are generally applicable in the present case, we also find extremely persuasive several decisions by other courts which addressed this issue in the context of an identical policy exclusion.[27] *Allstate Ins Co v Gilbert* [852 F2d 449, 453-454 (CA 9, 1988)]; *Allstate Ins Co v Condon,* 198 Cal App 3d 148; 243 Cal Rptr 623 (1988); *Allstate Ins Co v Foster,* 693 F Supp 886, 889 (D Nev, 1988); *Travelers Ins Co v Blanchard,* 431 So 2d 913 (La App, 1983).

---

[27] Conversely, *we also find equally instructive cases which have distinguished "the insured" from "an insured" and "any insured."* *Allstate Ins Co v Green,* 831 F2d 145, 147 (CA 6, 1987); *Safeco Ins Co of America, Inc v McKenna,* 90 NM 516; 565 P2d 1033 (1977); *Pawtucket Mutual Ins Co v Lebrecht,* 104 NH 465; 190 A2d 420 (1963); *Borbor, supra* at 894; *Aponaug Mfg Co, supra* at 674.

---

[*Freeman, supra* at 692-693. Emphasis added.]

After considering the *Gilbert* decision and Justice ARCHER's partial dissent in *Freeman,* Chief Justice RILEY's opinion again returns to the subject of the distinction between "an" and "the":

Furthermore, we agree with those decisions that reach the same conclusion as *Gilbert* by relying upon a correct usage of the English language. See *Allstate Ins Co v Foster, supra* at 889. This case does not present a situation in which the particular word in question has several meanings. See *Shumake v Travelers Ins Co,* 147 Mich App 600, 607-608; 383 NW2d 259 (1985). Rather, this case involves the interpretation of a word in which sources uniformly define "an" as an indefinite article. For example, the *Foster* court stated that,

" '[a]' or 'an' is an indefinite article often used in the sense of 'any' and applied to more than one individual object; whereas 'the' is an article which particularizes the subject spoken of." *Foster, supra* at 889; Black's Law Dictionary (5th ed); *The American Heritage Dictionary* (2d ed, 1982). See *Brooks v Zabka,* 168 Colo 265, 268-270; 450 P2d 653 (1969); *People v Enlow,* 135 Colo 249, 261-263; 310 P2d 539 (1957); [Comment, *Spouses's fraud as a bar to insurance recovery,* 21 Wm & Mary L R 543, 551 (1979)]. We agree. Strong public policy supports this decision. Adherence to a correct usage of the English language in insurance contract construction promotes a uniform, reliable, and reasonable foundation upon which policyholders and insurers alike may rely when they enter into a contractual agreement. In the instant case, if we place the word "a" or "an" in front of the word "insured," then we must conclude that "an insured" unambiguously means "any insured."[31]

---

[31] Similarly, we disagree with Justice CAVANAGH's conclusion that the exclusion in the Allstate policy "is reasonably susceptible of two different meanings" on the basis of the definition of the word "an" in Black's Law Dictionary. *Post,* p 744. This statement is misleading and incorrect. Justice CAVANAGH cites the definition of "a" and not "an," which suggests his recognition that the definition of "an" contradicts his position. "The English indefinite article, equivalent to 'one' or 'any' . . . ." Black's Law Dictionary (5th ed), p 77. By contrast, the definition of "the" states:

"An article which particularizes the subject spoken of. 'Grammatical niceties should not be resorted to without necessity; but it would be extending liberality to an unwarrantable length to confound the articles "a" and "the." The most unlettered persons understand that "a" is indefinite, but "the" refers to a certain object.' " [*Id.,* p 1324.]

---

[*Freeman, supra* at 698-699.]

The cases from our sister jurisdictions cited in Chief Justice RILEY's footnote 27 in *Freeman* are also instructive on this issue. In *Aponaug Mfg Co, supra,* the court considered whether Western Casualty had a duty to defend and indemnify Aponaug for a suit brought against Aponaug by a third

party for injuries sustained as a result of an assault and battery on that third party by the president of Aponaug. The insurance policy issued by Western Casualty covered assault and battery unless it was committed by or at the direction of "the Insured." *Id.* at 674. The Fifth Circuit concluded that use of the term "the Insured" precluded coverage only as to an insured who had committed or directed the commission of the assault and battery:

> The word "the" qualifies the word "insured" and means, we think, that when the coverage of the policy as to a particular insured is at issue and that insured either committed or directed the assault and battery, then, as to such insured the assault and battery shall not be deemed an accident. The clause is without effect as to other persons insured who neither committed nor directed the commission of the assault and battery. [*Id.*]

Similarly, in *Pawtucket Mutual, supra,* the Supreme Court of New Hampshire concluded that the plaintiff owed a duty to defend and indemnify the named insureds in an action filed against them arising out of an assault committed by their minor son on a third party, also a minor. The insurance policy at issue contained an exclusionary clause which provided that there was no liability for injuries "caused intentionally by or at the direction of the Insured." 104 NH 467. The court concluded that use of the term "the Insured" referred only to the specific insured who was involved in the occurrence and would not apply to any other insureds who had not actually committed the assault:

> We are of the opinion that the provisions exclud-

ing from liability coverage injuries intentionally caused by "the Insured" was [*sic*] meant to refer to a definite, specific insured, namely the insured who is involved in the occurrence which caused the injury and who is seeking coverage under the policy. *Employers c& Ins Co v Byers,* 99 NH 455, 457 [114 A2d 888 (1955)]. Consequently the policy covers the named insureds, Thomas and Marjorie Lebrecht against liability for the intentional injury committed not by them but by their minor son who is an insured under the omnibus clause but who would be excluded from coverage as the insured under exclusion clause "c." *Hoyt v New Hampshire Fire Ins Co,* 92 NH 242 [29 A2d 121 (1942)]; *Arenson v National Automobile & Cas Ins Co,* 45 Cal 2d 81 [286 P2d 816 (1955)]; See *Wenig v Glens Falls Indemnity Co,* 294 NY 195 [61 NE2d 442 (1945)]. [104 NH 468.]

In light of the above, we conclude that the distinction between "an insured" and "the insured" is not, as plaintiff suggests, irrelevant, but, rather, highly relevant. Accordingly, we conclude that, consistent with *Freeman, supra,* exclusionary language referring to the conduct by "an insured" excludes coverage to all insureds on the basis of the conduct of any insured. However, where, as in the case at bar, the exclusionary clause refers to the conduct of "the insured," coverage is only precluded as to the particular insured who engaged in the conduct and not as to any other insured covered by the same policy.

Accordingly, we hold that the fact that the injury inflicted by Ellis, Jr., may have been expected or intended by Ellis, Jr., does not relieve plaintiff of its duty to defend and indemnify Ellis, Sr., if the injury was not also intended or expected by Ellis, Sr. In sum, the trial court erred by concluding that plaintiff owed no duty to defend and indemnify Ellis, Sr., on the basis of the fact

that the injury inflicted upon defendant's decedent by Ellis, Jr., was intended or expected by Ellis, Jr. Accordingly, the trial court erred in granting summary disposition in favor of plaintiff.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. Defendant McKinney may tax costs.