ALLSTATE INSURANCE COMPANY, Plaintiff-Appellee, v. HELENE
SMILEY *et al.*, Defendants-Appellants.

Second District   No. 2—95—0268

Opinion filed November 30, 1995.—Rehearing denied January 30, 1996.

Robert G. Black, of Naperville, and Michael S. Cetina, of Connolly, Ekl & Williams, P.C., of Clarendon Hills, for appellant Venton James Carlston.

Paul F. Conarty, of Paul F. Conarty, Ltd., of Wheaton, for appellant Helene Smiley.

D. Kendall Griffith, Stephen R. Swofford, Kristin E. Hutson, and Peter C. Morse, all of Hinshaw & Culbertson, of Chicago, for appellee.

JUSTICE BOWMAN delivered the opinion of the court:

Plaintiff, Allstate Insurance Company (Allstate), brought this complaint for declaratory judgment against its insureds, Helene Smiley, David Smiley, and Helene Smiley, as mother and next friend of Kristel Smiley (the Smileys), and the plaintiff in the underlying personal injury action, Venton James Carlston (Carlston), special administrator of the estate of Venton Connor Carlston. Allstate sought a declaration that its homeowners' and personal umbrella policies (collectively, the policies) it issued to the Smileys did not afford coverage for the claims asserted against them by Carlston. The trial court granted Allstate's motion for summary judgment, and the Smileys and Carlston (collectively, the defendants) filed this timely appeal. We affirm in part, reverse in part, and remand.

## BACKGROUND

In the early 1980's, the Smileys purchased a homeowners' insurance policy from Allstate. In 1987, Helene Smiley began providing day-care services for children at her home. In 1988, she purchased a personal umbrella policy from Allstate because, according to her deposition testimony, she wanted coverage for her expanding child-care business. According to Helene Smiley, she called Bonnie Perton, her Allstate agent, and told her that she thought it was a "good decision" to get an umbrella policy "considering my own children and the other children that I cared for." Perton told her the policy would be "taken care of." At her deposition, Perton stated that she could not remember the substance of this conversation. However, when asked what her response would be to an applicant's comment that she wanted a personal umbrella policy because of her own children and the children she cared for, Perton replied that she would question the applicant regarding whether a business activity was being conducted.

On July 29, 1993, Venton Connor Carlston (Connor), a 20-month-old infant whom Helene Smiley was caring for, fell into the Smileys' backyard swimming pool and drowned. The swimming pool was separated from the back deck of the Smileys' house by a fence and gate. At the time of Connor's death, both the homeowners' and personal umbrella policies were in effect. Carlston, as special administrator of Connor's estate, sued the Smileys. The complaint alleged that Connor had been in the care, custody, and control of Helene Smiley at the time of his death and that Helene Smiley's negligent acts and/or David Smiley's negligent failure to maintain properly the premises caused his death.

Defending the lawsuit under a reservation of rights, Allstate brought this complaint for declaratory relief against the Smileys and Carlston. In its complaint, Allstate alleged that Helene Smiley provided day-care services for compensation in her home at the time of Connor's death. Allstate asked for a declaration that (1) it was not obligated to defend or indemnify the Smileys in the underlying personal injury action; and (2) the homeowners' and personal umbrella policies did not provide coverage to the Smileys for the claims made against them by Carlston.

In support of its position, Allstate invoked the following provisions from the homeowners' policy:

"Losses We Cover

Subject to the terms, limitations and conditions of this policy, **Allstate** will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property**

damage arising from an accident covered by this part of the policy.

\* \* \*

### Losses We Do Not Cover

\* \* \*

12. **We** do not cover **bodily injury** or **property damages** arising out of the past or present **business** activities of an **insured person.**

**We** do cover the occasional or part-time **business** activities of an insured person who is a student under 21 years of age."

The homeowners' policy also provides the following definition:

"5. **'Business'** means:

a) any full or part-time activity of any kind engaged in for economic gain and the use of any part of any premises for such purposes. The providing of home day care services to other than an **insured person** or relative of an **insured person** for monetary or other compensation is also **business.** However, the mutual exchange of home day care services is not considered compensation."

Allstate also invoked the following provisions from the personal umbrella policy:

"**When We Pay**

**Allstate** will pay when an **Insured** becomes legally obligated to pay for **personal Injury** or **property damage** caused by an **occurrence.**

\* \* \*

### Losses We Cover

Coverage applies to an **occurrence** arising only out of:

1. Personal activities of an **insured**, including the lending by an **insured** of a land vehicle or water craft owned by an **insured.** Activities related to any **business** or **business property** of any **Insured** are not covered.

\* \* \*

### Exclusions—Losses We Do Not Cover

This policy will not apply:

1. to any act, or failure to act, by any person in performing functions of that person's **business.**

2. to any **occurrence** arising out of a **business** or **business property.**"

The personal umbrella policy also provides the following definitions:

"4. **'Business'** means any full or part-time activity of any kind engaged in for economic gain.

Business includes:

> a) the providing of home day care services to someone other than an **Insured** for monetary or other compensation. However, the mutual exchange of home day care services is not considered compensation.

* * *

Business does not include:

* * *

> d) the occasional or part-time business activities of an **Insured** who is under 21 years of age.
>
> 5. '**Business Property**' means any property on which a business is conducted."

David Smiley and Carlston filed separate motions for judgment on the pleadings pursuant to section 2—615(e) of the Code of Civil Procedure (735 ILCS 5/2—615(e) (West 1994)). Allstate filed its own motion for judgment on the pleadings in which it asserted that no coverage was provided to David Smiley because Connor's injuries arose out of Helene Smiley's business activities.

On June 9, 1994, the trial court denied David Smiley's motion for judgment on the pleadings but granted Allstate's motion against both David Smiley and Helene Smiley. The court also ruled:

> "[I]n the event it is proven by a preponderance of the evidence that HELENE SMILEY was providing due care [*sic*] for compensation for the decedent Venton Carlston at the time of his death, this order shall be determinative of the parties' coverage rights and obligations solely under the express terms of the Homeowners and Umbrella policies at bar."

Subsequent discovery revealed that Helene Smiley began to provide day-care services to Connor on or about December 30, 1991, usually on every weekday, and that she received over $8,500 from the Carlstons during the approximately 19 months she cared for Connor. In response to a request to admit facts, Helene Smiley admitted that at the time of Connor's death she was providing day-care services to him for compensation.

Thereafter, Carlston filed an amended complaint against the Smileys in the underlying personal injury action. Count I was a wrongful death count against Helene Smiley. It alleged that Connor was at Helene Smiley's home and within her care and custody on July 29, 1993, but that Helene Smiley negligently supervised Connor; negligently failed to keep Connor away from the swimming pool; negligently created a dangerous and hazardous condition on her premises; and negligently failed to provide an adequate lock on the gate leading into the pool area. Count II, a survival action, essentially

mirrored these allegations. Count III, a wrongful death count against David Smiley, alleged that David. Smiley negligently failed to have an adequate lock on the gate surrounding the pool; negligently failed to have a fence of sufficient height surrounding the pool; and negligently failed to have the pool alarm in the pool at the time children were present on the premises. Count IV was a wrongful death count against Kristel Smiley, the Smileys' teenage daughter who was paid by her mother to help watch the children. Count IV alleged that Kristel Smiley negligently failed to supervise and monitor Connor; negligently failed to keep Connor away from the swimming pool; and negligently left Connor unattended while her mother cared for another child.

On October 25, 1994, Allstate filed a motion for summary judgment on the ground that the business activities exclusions barred coverage for the Smileys' actions. On December 12, 1994, Carlston filed several affirmative defenses alleging that Allstate was estopped from denying coverage under the business activities exclusions because, *inter alia*, Allstate was on notice that Helene Smiley was conducting a home day-care business at the time the personal umbrella policy was issued. On January 30, 1995, the trial court granted Allstate's motion for summary judgment. This timely appeal followed.

## DISCUSSION

Defendants raise three principal contentions on appeal: (1) the policies provide coverage for Connor's injuries because the underlying complaint alleges proximate causes of Connor's injuries which did not arise out of Helene Smiley's business activities; (2) the policies expressly exempt Kristel Smiley's activities from the business activities exclusions; and (3) Allstate is estopped from claiming that the policies do not provide coverage for Connor's injuries. We will address each contention separately.

Preliminarily, however, we note that this is an appeal of a summary judgment entered pursuant to section 2—1005 of the Code of Civil Procedure (735 ILCS 5/2—1005 (West 1994)). Summary judgment is appropriate when there is no issue of material fact and the moving party's right to judgment is clear and free from doubt. (*Espinoza v. Elgin, Joliet & Eastern Ry. Co.* (1995), 165 Ill. 2d 107, 113.) To aid in this determination, the trial court must consider the affidavits, depositions, admissions, exhibits, and pleadings on file and construe them strictly against the movant and liberally in favor of the nonmoving party. (*Espinoza*, 165 Ill. 2d at 113.) Although summary judgment is encouraged to aid the expeditious disposition of a lawsuit, it

is a drastic means of disposing of litigation. (*In re Estate of Hoover* (1993), 155 Ill. 2d 402, 410.) Thus, where reasonable persons could draw divergent inferences from the undisputed material facts or where there is a dispute as to a material fact, summary judgment should be denied, and the issue decided by the trier of fact. (*Espinoza,* 165 Ill. 2d at 114.) In cases involving summary judgment, we conduct a *de novo* review of the evidence in the record. *Espinoza,* 165 Ill. 2d at 113.

We further note that our analysis is guided by the well-established principles relating to the interpretation of an insurance policy. The terms of an insurance policy must be read according to their plain and ordinary meaning, and a court should not search for an ambiguity where there is none. (*United States Fire Insurance Co. v. Schnackenberg* (1981), 88 Ill. 2d 1, 5; *Badger Mutual Insurance Co. v. Ostry* (1994), 264 Ill. App. 3d 303, 308.) In determining whether the terms of a policy are ambiguous, the test is not what the insurer intended its words to mean, but what a reasonable person in the position of the insured would understand them to mean. (*Insurance Co. v. Markogiannakis* (1989), 188 Ill. App. 3d 643, 654-55.) All the provisions of the policy should be read together to aid interpretation and to determine whether an ambiguity exists. (*Schnackenberg,* 88 Ill. 2d at 5.) Ambiguous provisions or equivocal expressions whereby an insurer seeks to limit its liability will be construed most strongly against the insurer and liberally in favor of the insured. (*Markogiannakis,* 188 Ill. App. 3d at 654-55.) Of course, if the provisions of the policy are clear and unambiguous there is no need for construction and the provisions will be applied as written. (*Markogiannakis,* 188 Ill. App. 3d at 655.) With these principles in mind, we turn to the merits of the case.

# I

Defendants' first contention is that the policies provide coverage for Connor's injuries because the complaint in the underlying personal injury action alleges proximate causes of Connor's injuries which did not arise out of Helene Smiley's business activities. Defendants note that, to be totally excluded from coverage under an insurance policy, an injury must have been caused solely by a proximate cause excluded under the policy. (See *United States Fidelity & Guaranty Co. v. State Farm Mutual Automobile Insurance Co.* (1987), 152 Ill. App. 3d 46.) Based on this authority, defendants maintain that the policies in the present case provide coverage for Connor's injuries because his injuries arose from multiple proximate causes.

As noted above, we are obligated to focus our analysis on the terms of the policies by reading them according to their plain and ordinary meanings. (See *Schnackenberg*, 88 Ill. 2d at 5.) The homeowners' policy excludes coverage for "**bodily injur[ies]** \*\*\* arising out of past or present **business** activities of an **insured**"; the personal umbrella policy excludes coverage for injuries arising out of "[a]ctivities related to any **business** \*\*\* of any **Insured**" (collectively, the business activities exclusions). Therefore, to determine whether these exclusions apply, we must consider two questions: (1) did Helene Smiley's care of Connor constitute a "business activity"?; and (2) did Connor's injuries arise out of this business activity? Only if we answer both questions in the affirmative may we conclude that the policies do not provide coverage for Connor's injuries.

A

■ The first question we consider is whether Helene Smiley's care of Connor constituted a "business activity." The homeowners' policy defines business as "[t]he providing of home day care services to other[s] \*\*\* for monetary or other compensation." Similarly, the personal umbrella policy defines business as "the providing of home day care services to someone other than an **Insured** for monetary or other compensation." Helene Smiley's care of Connor clearly falls within the scope of these definitions. The undisputed evidence demonstrates that the Carlstons hired Helene Smiley to care for Connor in the Smileys' home; that Helene Smiley cared for Connor almost every weekday for at least six months prior to Connor's death; and that Helene Smiley received money from the Carlstons to care for Connor. Given these undisputed facts, we conclude that Helene Smiley provided day-care services for compensation in her home to Connor and that these services constituted a business activity as defined by the homeowners' and personal umbrella policies.

B

We next consider whether Connor's injuries arose out of Helene Smiley's business activities. Although not ambiguous as a matter of law, the phrase "arising out of" in an exclusionary clause of an insurance policy should be given a limited interpretation in favor of the insured. (*Oakley Transport, Inc. v. Zurich Insurance Co.* (1995), 271 Ill. App. 3d 716, 721-22.) Under ordinary usage, the word "arise" means "[t]o spring up, originate, to come into being or notice" (Black's Law Dictionary 108 (6th ed. 1990)), or "to come into being," "to come about: come up: take place" (Webster's Third New International Dictionary 117 (1986)).

■ Applying these definitions to the case at bar, it is clear Connor's injuries arose out of Helene Smiley's business activities. Connor was at the Smiley residence on July 29, 1993, only because the Carlstons paid Helene Smiley to provide day-care services to Connor. These services included the duty to exercise due care to protect Connor from any dangerous household conditions. (See *State Farm Fire & Casualty Co. v. Moore* (1981), 103 Ill. App. 3d 250, 255.) Regardless of how defendants attempt to characterize Helene Smiley's actions: as a failure to supervise Connor properly; as a failure to restrict Connor's access to the pool; or as a failure to provide adequate locks on the gate, Connor's death unquestionably originated or came about from the day-care services Helene Smiley was paid to provide. As such, Connor's injuries arose out of Helene Smiley's business activities and are not covered by the policies. To hold otherwise would require us to exercise our inventive powers and pervert the plain language of the policies—an approach which we are unwilling to follow. See *Oakley Transport, Inc.*, 271 Ill. App. 3d at 722.

Moreover, the language in the exclusions operates to bar coverage for David Smiley's alleged negligence. The homeowners' policy excludes coverage for "**bodily injur[ies]** *** arising out of past or present business activities of *an* **insured**" (emphasis added), and the personal umbrella policy excludes coverage for injuries arising out of "[a]ctivities related to any **business** *** of *any* **Insured**." (Emphasis added.) The word "an" is an indefinite article and is applied to more than one individual object. (*Allstate Insurance Co. v. Foster* (D. Nev. 1988), 693 F. Supp. 886, 889; see also Black's Law Dictionary 84 (6th ed. 1990) (defining "an" as "[t]he English indefinite article").) Also, the word "an" is often used in the sense of "any" (*Foster*, 693 F. Supp. at 889; see also Black's Law Dictionary 84 (6th ed. 1990) (stating that the word "an" is "equivalent to 'one' or 'any' ")), and use of the phrase "an insured" in an exclusionary clause unambiguously means "any insured" (*Allstate Insurance Co. v. Freeman* (1989), 432 Mich. 656, 698-99, 443 N.W.2d 734, 753-54). In the present case, therefore, employing the words "an" and "any" broadened the exclusions to include injuries triggered by one insured in connection with the business activities of another insured. See *Thoele v. Aetna Casualty & Surety* (7th Cir. 1994), 39 F.3d 724, 727; *cf. State Farm Fire & Casualty Co. v. Davis* (Ala. 1993), 612 So. 2d 458, 466; *Allstate Insurance Co. v. Stamp* (1991), 134 N.H. 59, 62, 588 A.2d 363, 365 (*per curiam*); *Chacon v. American Family Mutual Insurance Co.* (Colo. 1990), 788 P.2d 748, 752.

■ Accordingly, the policies do not cover David Smiley's alleged negligence because any injuries he may have caused were connected

with his wife's business activities. The underlying complaint alleges David Smiley had a duty to provide adequate locks on the gate to the pool, to provide a fence around the pool of sufficient height, and to activate the pool alarm when children were present. These alleged duties, however, were inextricably connected with and indistinguishable from the duties Helene Smiley owed to the children for whom she cared. If the children were not present in the home, David Smiley would not have owed or breached these alleged duties. Since the children were on the premises only because of Helene Smiley's daycare services, the injuries allegedly caused by David Smiley's negligence were connected to his wife's business activities. Hence, David Smiley's alleged negligence is not covered by the policies.

■ Our conclusion likely would be different if the exclusions used the phrase "the insured" rather than "an insured" or "any Insured." The word "the" is "[a]n article which particularizes the subject spoken of" (Black's Law Dictionary 1477 (6th ed. 1990)); thus, use of the term "the insured" in an exclusionary clause is meant to refer to a definite, specific insured. (*Vanguard Insurance Co. v. McKinney* (1990), 184 Mich. App. 799, 809, 459 N.W.2d 316, 320.) Consequently, if the policies in the present case excluded coverage for bodily injuries arising out of the business activities of "*the* insured," we would likely hold that coverage would exist for David Smiley's alleged negligence because the exclusions only referred to the specific insured who engaged in the business activities. (*Cf. McKinney*, 184 Mich. App. at 809, 459 N.W.2d at 320; *Pawtucket Mutual Insurance Co. v. Lebrecht* (1963), 104 N.H. 465, 468, 190 A.2d 420, 423.) However, Allstate's use of the indefinite article "an" and its equivalent "any" before "insured" demonstrates that the policies do not provide coverage for injuries caused by David Smiley which are related to the business activities of his wife.

## C

Defendants argue that our analysis is misguided because it fails to consider that Connor's injuries were allegedly the result of multiple proximate causes. The underlying complaint alleges that the independent negligent acts of Helene Smiley, David Smiley, and Kristel Smiley served as proximate causes of Connor's injuries. Defendants argue that, because these proximate causes are not excluded by the policies, the entire claim must be covered under the principles announced in the connected cases of *United States Fidelity & Guaranty Co. v. State Farm Mutual Automobile Insurance Co.* (1982), 107 Ill. App. 3d 190 (*USF&G I*), and *United States Fidelity & Guaranty Co. v. State Farm Mutual Automobile Insurance Co.* (1987), 152 Ill. App. 3d 46 (*USF&G II*) (collectively, *USF&G*).

In *USF&G*, a child was injured when she fell out of a car owned and operated by the day-care center she attended. The subsequent complaint against the day-care center alleged that the owner or employees of the day-care center were negligent in operating the day-care center and negligent in operating the automobile. USF&G, the insurer of the day-care center, sought a declaration that it did not owe a duty to defend or indemnify the center. Under the terms of the insurance policy, the day-care center was covered against claims "caused by an occurrence and arising out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental to the business of the named insured conducted at or from the insured premises." (*USF&G I*, 107 Ill. App. 3d at 191.) The policy excluded claims "arising out of the ownership, maintenance, operation, use, loading or unloading of \*\*\* any \*\*\* automobile or aircraft operated by any person in the course of his employment by any insured." *USF&G I*, 107 Ill. App. 3d at 191.

The *USF&G* courts determined that USF&G had a duty to defend (*USF&G I*, 107 Ill. App. 3d at 194) and to indemnify (*USF&G II*, 152 Ill. App. 3d at 49) because the injury was caused by two independent, proximate causes: the negligence of the day-care center in supervising the children and the negligence of the employees in operating the vehicle. The court reasoned:

> "If a proximate cause of an injury is within the included coverage of an insurance policy, the included coverage is not voided merely because an additional proximate cause of the injury is a cause which is excluded under the policy. Thus, in order for an injury to be excluded from coverage under an insurance policy, the injury must have been caused solely by a proximate cause which is excluded under the policy." (*USF&G II*, 152 Ill. App. 3d at 48.)

Because USF&G could not prove that the automobile-related negligence was the sole proximate cause of the injury, the claim was covered. *USF&G II*, 152 Ill. App. 3d at 49.

*USF&G*, however, is completely understood only when it is read in conjunction with *Allstate Insurance Co. v. Pruitt* (1988), 177 Ill. App. 3d 407. In *Pruitt*, Roy Pruitt, Sr., purchased a homeowners' policy which included coverage for personal injury damages caused by a member of the household, but excluded bodily injury damages arising out of the ownership, maintenance, or use of any motorized land vehicle or trailer. (*Pruitt*, 177 Ill. App. 3d at 409.) After Pruitt's son, Roy Jr., ran into a man while riding his motorized minibike, the injured man sued Roy Jr. for the negligent operation of the minibike and Roy Sr. for the negligent failure to supervise his son. The insurer sought a declaration that it was not obligated to defend or indemnify

the Pruitts. Relying on *USF&G I*, the Pruitts argued that " 'the separate and distinct allegation of failure to supervise may be covered even in a case where negligent operation is also alleged and excluded.' " (*Pruitt*, 177 Ill. App. 3d at 410.) The court held that the insurer had no duty to defend or indemnify the Pruitts. The court distinguished *USF&G* as a case in which "the underlying complaint described acts of alleged negligence and theories of recovery wholly independent from those relating to the allegedly negligent operation of the automobile," whereas the claim of negligent supervision against Pruitt was "based solely on the minor's ownership and operation of the minibike." (*Pruitt*, 177 Ill. App. 3d at 411.) Because Roy Sr. could be found negligent only if Roy Jr. was found negligent, the excluded cause predominated, and the claim was not covered.

■ Applying the principles announced in *USF&G* and *Pruitt* to the present case, we conclude that the proximate causes alleged in the underlying complaint are not wholly independent of Helene Smiley's business activities. The proximate causes alleged in the underlying complaint—Helene Smiley's failure to supervise Connor, Helene and David Smiley's failure to install an adequate lock on the gate, and David Smiley's failure either to install a fence of sufficient height around the pool or to activate the pool alarm—are derivative of the duties Helene Smiley owed as a result of her business activities. The allegations regarding the maintenance of the Smileys' premises are essentially indistinguishable from the allegations of negligent supervision. Because the excluded cause predominates, this case is more closely analogous to *Pruitt* than to *USF&G*. Hence, under the facts before us, we conclude that the policies do not cover Connor's injuries to the extent that they were caused by Helene and David Smiley's actions.

Even if *USF&G* were applicable, we would still be reluctant to follow it due to its assimilation of principles from tort law into the analysis of an insurance policy. The issue before a court ruling on a complaint for declaratory relief is the interpretation of the insurance policy in accordance with the plain meaning of the policy's terms. (See *Schnackenberg*, 88 Ill. 2d at 5.) Under the *USF&G* approach, however, principles of negligence, such as proximate causation, are incorporated into the interpretation of an insurance policy. By intermingling contract and tort principles, *USF&G*'s approach "fails to recognize that tort liability on the part of the insured establishes contractual liability on the part of the insurer only where the policy affords coverage, and that determination is subject to the rules of contract construction, and not tort principles." (See *Oakley Transport, Inc.*, 271 Ill. App. 3d at 725.) Thus, although *USF&G* is distinguish-

able from the present case, we nevertheless question *USF&G*'s introduction of tort principles into the interpretation of an insurance policy.

## II

Defendants' second contention is that the homeowners' and personal umbrella policies expressly exempt Kristel Smiley's activities from the business activities exclusions. The homeowners' policy provides that coverage is available for the "occasional or part-time **business** activities of an insured person who is a student under 21 years of age." The personal umbrella policy, which excludes coverage for injuries arising out of "[a]ctivities related to any **business** \*\*\* of any **Insured**," defines "business" as not including "the occasional or part-time business activities of an **Insured** who is under 21 years of age." Defendants maintain that these provisions expressly provide coverage for Kristel Smiley's actions, because Kristel Smiley was paid by her mother to care for the children on a part-time basis. Allstate responds that coverage is denied because Connor's injuries arose out of Helene Smiley's business activities and not the "part-time business activities" of Kristel Smiley.

■ We disagree with Allstate's reading of the "under 21" provisions. Under Allstate's reading, the "under 21" provisions contemplate claims arising *solely* out of the business activities of the under-21 insured person. This reading, however, imposes a condition not provided by the plain language of the policies. At a minimum, therefore, the "under 21" provisions are ambiguous and thus should be construed strongly against Allstate and liberally in favor of the Smileys. (See *Markogiannakis*, 188 Ill. App. 3d at 654-55.) Construing these provisions strongly against Allstate and liberally in favor of the Smileys, we conclude that a reasonable person would understand the provisions to cover the business activities of Kristel Smiley at issue here, regardless of whether these activities were related to Helene Smiley's business activities. Because Allstate apparently does not dispute that the requirements of the "under 21" provisions have been otherwise satisfied (except for their belief that Kristel Smiley's business activities cannot be related to her mother's business activities), we conclude that the policies provide coverage for her alleged negligence.

## III

Defendants' third contention is that Allstate is estopped from denying that the personal umbrella policy does not provide coverage for Connor's injuries. To establish estoppel in an insurance policy

context, the insured must prove: (1) that he was misled by the acts or statements of the insurer or its agent; (2) reliance by the insured on those representations; (3) that such reliance was reasonable; and (4) detriment or prejudice suffered by the insured based upon that reliance. (*Allstate Insurance Co. v. Tucker* (1989), 178 Ill. App. 3d 809, 811.) According to defendants, the actions of Allstate agent Bonnie Perton misled the Smileys into believing that the day-care business was completely insured. Allstate responds that Helene Smiley did not specifically request coverage for the risks involved in operating a home day-care business; therefore, it could not have made any representations to her concerning the coverage.

■ We conclude that there is evidence which supports defendants' theory of estoppel. Helene Smiley testified that she told Bonnie Perton, her Allstate agent, that she thought it was a "good decision" to get an umbrella policy "considering my own children and the other children that I cared for." Although Perton did not recall this conversation, she did testify, in response to a hypothetical question, that the above statements would prompt her to ask the applicant whether she was operating a day-care business. Given the evidence and the standard of review we are compelled to apply, we believe that a reasonable person could conclude that Helene Smiley sufficiently notified Allstate that she wanted coverage for her day-care business. Thus, a material issue of fact exists as to whether Helene Smiley's statements placed Allstate on notice that she wanted an insurance policy which provided coverage for her day-care business.

Moreover, if Allstate was on notice that Helene Smiley was seeking coverage for her day-care business, then a material issue of fact exists regarding whether Perton represented to Helene Smiley that the insurance policy would be "taken care of," and whether this statement constitutes a "representation" upon which Helene Smiley could rely. Material issues of fact also exist regarding whether Helene Smiley reasonably relied upon Perton's alleged representations and whether Helene Smiley suffered a detriment based upon that reliance. Consequently, the trial court erred in granting summary judgment on this issue. See *Tucker*, 178 Ill. App. 3d at 812.

## CONCLUSION

In conclusion, we affirm the trial court's ruling that the policies do not provide coverage for Helene and David Smiley's alleged negligence. We reverse the trial court's ruling that the "under 21" provisions do not provide coverage for Kristel Smiley's alleged negligence. We also hold that issues of material fact exist as to whether Allstate was estopped from denying coverage under the

terms of the personal umbrella policy. Thus, we remand for proceedings consistent with the views expressed herein.

The order of the circuit court of Du Page County granting Allstate's motion for summary judgment is affirmed in part, reversed in part, and remanded.

Affirmed in part; reversed in part and remanded.

GEIGER and COLWELL, JJ., concur.