# STATE OF MICHIGAN
# COURT OF APPEALS

---

FARM BUREAU GENERAL INSURANCE
COMPANY OF MICHIGAN,

        Plaintiff/Counter-Defendant-
        Appellee,

v

YVONNE J. HARE, Individually and as Next
Friend of OLIVIA HARE and JACK HARE,
Minors,

        Defendants/Counter-Plaintiffs-
        Appellants,

and

DUANE PAUL ALEXANDER and CARL
ALEXANDER, Individually and as Personal
Representative of the Estate of PATRICIA
ALEXANDER,

        Defendants/Counter-Plaintiffs.

UNPUBLISHED
August 20, 2015

No. 320710
Oakland Circuit Court
LC No. 2013-133979-CK

---

FARM BUREAU GENERAL INSURANCE
COMPANY OF MICHIGAN,

        Plaintiff/Counter-Defendant-
        Appellee,

v

DUANE PAUL ALEXANDER and CARL
ALEXANDER, Individually and as Personal
Representative of the Estate of PATRICIA
ALEXANDER,

        Defendants/Counter-Plaintiffs-
        Appellants,

No. 320771
Oakland Circuit Court
LC No. 2013-133979-CK

and

YVONNE J. HARE, Individually and as Next
Friend of OLIVIA HARE and JACK HARE,
Minors,

              Defendants/Counter-Plaintiffs.

---

Before:  OWENS, P.J., and SAAD and GADOLA, JJ.

PER CURIAM.

     In these consolidated appeals, defendants, Duane Paul Alexander, Carl Alexander, Olivia Hare, and Jack Hare, appeal as of right from an order granting summary disposition in favor of plaintiff, Farm Bureau General Insurance Company of Michigan, pursuant to MCR 2.116(C)(10) in this action to determine Farm Bureau's liability for underinsured motorist (UIM) coverage. Because the total amount payable by the at-fault driver exceeded the UIM coverage offered by Farm Bureau, the trial court did not err in finding that Farm Bureau was entitled to summary disposition pursuant to the setoff provision of its insurance policy.  Therefore, we affirm.

## I. FACTS

     On September 1, 2012, a vehicle driven by Andrea Diamond crossed the center line of US-70 in Tennessee and struck a vehicle owned and operated by defendant Duane Paul Alexander.  Carl Alexander, Patricia Alexander, Yvonne Hare, Olivia Hare, and Jack Hare were all passengers in the vehicle driven by Duane.[1]  Patricia died from injuries sustained in the accident.  The other occupants were severely injured.

     At the time of the foregoing events, Duane was the named insured on a no-fault policy issued by Farm Bureau.  The UIM provisions of the policy provided for UIM coverage limits of $100,000 per person and $300,000 per occurrence.  Diamond, the tortfeasor, was insured by GEICO.  The liability limits of the GEICO insurance policy were $250,000 per person and $500,000 per occurrence.  Defendants sought UIM coverage from Farm Bureau, which denied their claims and thereafter filed this action seeking a declaratory judgment that it did not owe UIM benefits to the six passengers injured in the accident.  At or about the time Farm Bureau filed its declaratory judgment action, GEICO tendered the limits of the tortfeasor's policy to defendants.  On May 28, 2013, the Hares requested permission from Farm Bureau to settle Yvonne's claims against the tortfeasor in the amount of $250,000.  Farm Bureau refused to consent to the settlement.  Notwithstanding this refusal, on August 14, 2013, Yvonne agreed to settle her claims against GEICO and its insured in the amount of $250,000.  Similarly, on August

---

[1] Yvonne Hare is the mother of the minor children Olivia Hare and Jack Hare.  Carl Alexander was the husband of Patricia Alexander.

28, 2013, Patricia's estate settled its claims against GEICO and its insured, again, in the amount of $250,000, thus exhausting the GEICO policy limits.

In Farm Bureau's motion for summary disposition, it asserted that, pursuant to MCR 2.116(C)(10), there existed no genuine issue of any material fact. Farm Bureau argued that under the terms of the no-fault policy issued to Duane, it did not owe UIM benefits because the tortfeasor's policy limits were greater than the limits under Farm Bureau's policy. Farm Bureau relied on the provision in its policy that provided that any amount payable for its UIM coverage would "be reduced by any amounts paid or payable for the same bodily injury." It then reasoned that because the GEICO policy had limits of $250,000/$500,000, any amounts possibly owed under its UIM coverage, which had policy limits of $100,000/$300,000, would be fully set off. In addition, Farm Bureau argued that because "an insured" settled with the tortfeasor without its consent, the provisions of its policy providing for UIM coverage were void.

In response, defendants argued that Farm Bureau's obligation to pay UIM benefits was not simply "reduced by the amount of total insurance coverage available to the vehicle of the negligent driver," but rather, "Farm Bureau's per person UIM limits for any particular insured person are only reduced by *payments* made to that insured person." Defendants then reasoned that because the settlements with Yvonne and Patricia's estate exhausted GEICO's policy limits, and because Jack, Olivia, Carl, and Duane had not received any benefits from those settlements with the tortfeasor, there were no funds paid or payable for them that would act to reduce the amount of UIM benefits available under the Farm Bureau policy. Defendants further challenged Farm Bureau's claim that the UIM coverage was void because of the settlements reached by Yvonne and Patricia's estate.

The trial court granted summary disposition in favor of Farm Bureau on the basis of the setoff provision in the UIM coverage endorsement and on the consent to settle clause in the endorsement. On appeal, defendants contend that the trial court erred. We disagree.

## II. STANDARDS OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Spiek v Dep't of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998). Farm Bureau moved for summary disposition pursuant to MCR 2.116(C)(10). "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). When considering a motion for summary disposition under MCR 2.116(C)(10), courts view the evidence submitted in a light most favorable to the nonmoving party. *Id.* "A genuine issue of material fact exists when reasonable minds could differ on a material issue." *Braverman v Granger*, 303 Mich App 587, 596; 844 NW2d 485 (2014).

Further, the interpretation of an insurance contract is a question of law that we review de novo. *Corwin v DaimlerChrysler Ins Co*, 296 Mich App 242, 253; 819 NW2d 68 (2012).

## III. ANALYSIS

UIM coverage is not required by Michigan's no-fault act, MCL 500.3101 *et seq*. *Rory v Continental Ins Co*, 473 Mich 457, 465; 703 NW2d 23 (2005). Consequently, "the scope, coverage, and limitations of underinsurance protection are governed by the insurance contract and the law pertaining to contracts." *Mate v Wolverine Mut Ins Co*, 233 Mich App 14, 19; 592 NW2d 379 (1998). An insurance policy must be read as a whole, and the language of the policy "is to be given its ordinary, plain meaning and technical, constrained constructions should be avoided." *Singer v American States Ins*, 245 Mich App 370, 374; 631 NW2d 34 (2001). "An insurance policy that is clear and unambiguous must be enforced in accordance with its terms." *Stoddard v Citizens Ins Co of America*, 249 Mich App 457, 460; 643 NW2d 265 (2002).

The analysis in this case must start with a review of the provisions of the Farm Bureau policy governing UIM coverage. The declarations page of the Farm Bureau policy provides for uninsured/underinsured motorist coverage in the amount of $100,000 per person and $300,000 per occurrence. Pursuant to the UIM endorsement, the definition of an uninsured motor vehicle was amended to include an underinsured automobile. Further, an underinsured automobile is defined as "an auto to which a bodily injury liability policy or bond applies at the time of the accident" and "in which the limits are less than the amount of damages the injured person is legally entitled to recover for bodily injury." Considering the fatality, nature of the injuries, and number of persons injured in this case, it cannot seriously be disputed that Diamond's vehicle fell within the definition of an underinsured automobile under the insurance policy.

The limits of liability for UIM coverage are governed by Part IV(C) of the Farm Bureau policy. Part IV also addresses available setoffs, and provides the following:

> C. Limit of Liability
>
> We will pay for compensatory damages up to the Limit of Liability stated in the Declarations as follows:
>
> 1. The limit of liability shown in the Declarations "per person" for Uninsured Motorist is our maximum limit of liability for all damages for bodily injury sustained by any one person in any one auto accident. Subject to this "per person" limit, the limit of liability shown in the Declarations "per occurrence" for Uninsured Motorist is our maximum limit of liability for all damages for bodily injury resulting from any one auto accident.
>
> 2. This is the most we will pay regardless of the number of:
>
> a. autos or premiums shown in the Declarations;
>
> b. claims made or suits brought;
>
> c. persons injured;
>
> d. autos involved in the accident; or

> e.     insureds.

> *3.     The amount payable for this Uninsured Motorist Coverage will be reduced by any amounts paid or payable for the same bodily injury*:

> a.     under Part I—Liability Coverage or Part II—Michigan No-Fault Coverages of this policy;

> b.     under any worker's compensation, disability benefits law, or similar law; or

> *c.     by or on behalf of any person or organization who may be legally liable for the bodily injury to the extent of any insurance applicable, and any assets not exempt from legal process.* [Emphasis added.]

Based on the plain language of this setoff provision, Farm Bureau's UIM coverage was subject to reduction by "any amounts paid or payable for the same bodily injury."

Defendants argue that because GEICO's settlements with Yvonne and Patricia's estate exhausted the tortfeasor's policy limits, there was no amount "paid or payable" to the remaining occupants of the vehicle. Accordingly, defendants reason, there is nothing available to reduce the UIM benefits owed by Farm Bureau to the remaining vehicle occupants. Defendants also focus on the phrase "for the same bodily injury," and argue that because the GEICO limits were paid to Yvonne and Patricia's estate, they would not be payments for "the same bodily injury," and therefore, could not be used to reduce the UIM benefits owed by Farm Buerau. Defendants' position is not supported by the plain language of the policy.

Defendants' focus on the phrase "for the same bodily injury" is misplaced. Rather, the critical phrase in the policy is "paid or payable." The term "payable" is not defined in the policy. This Court may consult a dictionary to aid in the interpretation of an undefined contractual term. *Vushaj v Farm Bureau Gen Ins Co*, 284 Mich App 513, 515; 773 NW2d 758 (2009*). Merriam-Webster's Collegiate Dictionary* (2014) defines the word "payable" as "that may, *can*, or must be paid." (Emphasis added.) In this case, the benefits from the GEICO insurance policy could have been paid to all of the occupants of the Alexander/Hare vehicle. Indeed, before the settlements with Yvonne and Patricia's estate, GEICO, on behalf of its insured, admitted that there was no defense available, and agreed to tender up to the entire policy limits to the occupants of the Alexander/Hare vehicle. Thus, the GEICO policy limits were "payable" to defendants Jack Hare, Olivia Hare, Duane Alexander, and Carl Alexander. As such, the GEICO policy limits were available to reduce the amount payable by Farm Bureau for UIM coverage to these individuals. Further, because the amounts payable under the GEICO policy were greater than the policy limits of the Farm Bureau UIM coverage, a complete setoff occurred. This analysis is consistent with the plain and unambiguous language of the Farm Bureau policy.

The fact that the GEICO policy limits were exhausted in the settlements with Yvonne and Patricia's estate is of no moment. At several points in time, the benefits from the GEICO policy were "payable" to the remaining occupants of the vehicle. They were only rendered unavailable after the families, their attorneys, and GEICO structured a settlement allocating all of the policy limits to the two occupants who suffered the most catastrophic injuries. Moreover, rights created

under an insurance policy become fixed as of the date of the accident. *Madar v League Gen Ins Co*, 152 Mich App 734, 742; 394 NW2d 90 (1986). In this case, on the date of the accident, the amounts payable to each individual occupant of the Alexander/Hare vehicle from the GEICO policy were $250,000 per person and $500,000 per occurrence. The fact that settlements were reached with only two of the occupants, which exhausted the GEICO policy limits, does not change the fact that the GEICO policy's UIM coverage limits were payable to the other four insureds in the vehicle.

The parties have not cited any published authority *directly* on point. However, our Supreme Court's decision in *Wilke v Auto-Owners Ins Co*, 469 Mich 41; 664 NW2d 776 (2003), is instructive. In that case, two injured plaintiffs settled with an at-fault driver by splitting the driver's $50,000 insurance policy limit. *Id.* at 44. Subsequently, the plaintiffs sought UIM coverage from another insurer. *Id.* The available UIM coverage had limits of $100,000 per person and $300,000 per occurrence. *Id.* The UIM coverage was also subject to setoff. *Id.* The insurer argued that the UIM coverage for each plaintiff should be set off by $50,000, while each plaintiff argued that "having equally split the [tortfeasor's] policy limits of $50,000, only the $25,000 they received should have been subtracted from the $100,000 policy limit." *Id.* at 45. The Supreme Court ultimately found that each individual's $100,000 UIM coverage limit would be set off by $50,000, not the $25,000 each received, explaining as follows:

> Paragraph 4(a)(1) states that the limit of liability for underinsured motorist coverage shall not exceed "the amount by which the Underinsured Motorist Coverage limits stated in the Declarations exceeds the *total limits* of all bodily injury liability bonds and policies *available to the owner* or operator of the underinsured automobile . . . ." (Emphasis added.) In this case, the underinsured-motorist coverage limit stated in Auto Owner's declaration is $100,000. The *total limit* of all bodily-injury liability polices *available to the owner* of the underinsured automobile . . . is $50,000. Therefore, the amount by which the underinsured-motorist coverage limit stated in the declarations exceeds the total limits of all bodily-injury policies available to the owner of the underinsured automobile is clearly $50,000, not $75,000. Contrary to the contention of [the] Court of Appeals, this provision cannot be "reasonably understood" to be referring to the amount actually received by the claimant because the provision specifically refers to the *total* available to the *owner*. [*Id.* at 49-50.]

Thus, the Supreme Court held in *Wilkie* that UIM benefits could be reduced not by what was actually paid by the tortfeasor to each individual plaintiff, but by what could have been received on the basis of the tortfeasor's policy limits.

The analysis in *Wilkie* is instructive by analogy. In *Wilkie*, the provision stating "policies available to the owner or operator of the underinsured automobile" is the functional equivalent of "amounts paid or payable for the same bodily injury . . . by or on behalf of any person . . . who may be legally liable for the bodily injury to the extent of any insurance applicable." Here, the amount payable by the tortfeasor was $250,000 per person and $500,000 per occurrence. Therefore, this was the amount that the trial court properly considered when it set off the Farm Bureau UIM coverage available to the four remaining vehicle occupants who did not receive any

compensation from the tortfeasor's GEICO policy. Hence, we conclude that the trial court did not err in finding that Farm Bureau was entitled to summary disposition.

As an alternative basis for granting Farm Bureau's motion for summary disposition, the trial court also found that GEICO's settlement with two of the insureds without Farm Bureau's consent voided the UIM coverage under the Farm Bureau policy. Because we have concluded that Farm Bureau was not obligated to pay UIM benefits, it is unnecessary to address this alternative ruling. In any event, we would further conclude that the trial court did not err when it determined that the conduct of two of the insureds voided the UIM provisions of the Farm Bureau policy.

The Farm Bureau policy's endorsement providing UIM coverage specifically addresses the impact of settlements with responsible parties. The endorsement states the following:

> b. Coverage under this endorsement shall be void if:
>
> (1) *an insured* agrees to settle a bodily injury claim without our permission; or
>
> (2) an insured agrees to settle with the person(s) responsible for the accident for an amount which does not exhaust both:
>
> (a) the sum of the limits of liability under all bodily injury liability bonds; and
>
> (b) insurance policies applicable at the time of the accident. [Emphasis added.]

The trial court found that the foregoing provisions were violated and, as a result, Farm Bureau's UIM coverage for all of the insureds was rendered void. The trial court's holding is consistent with the plain and unambiguous language of the policy, stating that UIM coverage is void if "an insured" agrees to a settlement without Farm Bureau's consent. This Court has held that "an insured" is the grammatical equivalent of "any insured." See, e.g., *Vanguard Ins Co v McKinney*, 184 Mich App 799, 809; 459 NW2d 316 (1990). Thus, Yvonne and Patricia's estate both constituted "an insured." Further, it is undisputed that these parties settled without Farm Bureau's consent. There is nothing in the plain language of Farm Bureau's policy to support defendants' interpretation that only the settling party's claim for UIM benefits would be void. Had Farm Bureau intended this interpretation, it could have provided that UIM benefits would be void or unavailable only as to "*the* insured" who settled without Farm Bureau's consent.

In sum, the trial court did not err in granting Farm Bureau's motion for summary disposition under MCR 2.116(C)(10).

Affirmed.

/s/ Donald S. Owens
/s/ Henry William Saad
/s/ Michael F. Gadola

-7-