**TRANSAMERICA INSURANCE COMPANY, Plaintiff–Appellee,**

v.

**Ronald M. SOUTH, David L. Domnick, First Financial Group of Illinois, et al., Defendants.**

**Appeal of Phoenix Home Life Mutual Insurance Company, Intervening Defendant–Appellant.**

**No. 95–2224.**

United States Court of Appeals, Seventh Circuit.

Argued April 5, 1996.

Decided July 16, 1996.

Rehearing Granted Oct. 21, 1996.

Reargued May 23, 1997.

Decided Sept. 22, 1997.

Timothy S. Richards (argued), Ellen M. Edmonds, Neville, Richards, Defranco & Wuller, Belleville, IL, for Plaintiff–Appellee.

Ronald M. South, St. Louis, MO, pro se.

Michael J. Nester, Donovan, Rose, Nester & Szewczyk, Belleville, IL, for Defendants.

Mark G. Zellmer, Matthew D. Menghini, Arthur L. Smith (argued), Husch & Eppenberger, St. Louis, MO, for Intervening Defendant–Appellant.

Before BAUER, CUDAHY, and FLAUM, Circuit Judges.

BAUER, Circuit Judge.

We hope this is the last time we have cause to consider the issues raised in this appeal concerning the insolvency exclusion in an insurance policy issued by Transamerica Insurance Company ("Transamerica") to Phoenix Home Life Mutual Insurance Company ("Phoenix").[1] This panel reversed the district court's grant of summary judgment

---

1. Phoenix was formerly Home Life Insurance Company, and the policy was actually issued to Home Life. This is irrelevant for purposes of this appeal, and we will refer to both companies as "Phoenix."

in favor of Transamerica and against Phoenix in our original opinion, which has been withdrawn from the bound volume. See 89 F.3d 475 (withdrawn), 1996 WL 394163 (7th Cir. 1996). We now vacate the portion of that opinion which discussed the insolvency exclusion and which referred to "life insurance policies" instead of annuities. We do not alter our previous conclusion that Phoenix has standing to appeal, which was thoroughly and accurately assessed by Judge Cudahy in our withdrawn opinion. Accordingly, we affirm the district court's grant of summary judgment in favor of Transamerica.

## Background

We assume familiarity with the facts in this case, as they have been thoroughly set forth in our previous opinion dealing with this particular insolvency exclusion, *see Transamerica Ins. Co. v. South*, 975 F.2d 321, 322–23 (7th Cir.1992) ("*South I*"), so we will only briefly reiterate the relevant facts. In 1988, Ronald South was an agent of Phoenix in Belleville, Illinois. South worked out of an agency owned by David Domnick, which was called First Financial Group of Illinois, Inc. Domnick supervised South, but South was an agent of Phoenix and not of Domnick. Domnick, too, was an agent of Phoenix. South recommended to several of his clients that they purchase "risk-free" annuities from First Columbia Insurance Company ("First Columbia").[2] First Columbia was not authorized to do business in Illinois, and so its annuities were not guaranteed by the Illinois Insurance Guarantee Fund. South had not bothered to check into the financial status of First Columbia before encouraging his clients to buy the annuities. After First Columbia went belly-up, some of South's clients who had purchased the annuities sued him for negligence and negligent misrepresentation, seeking to recover their losses.

During the relevant time period, Phoenix agents were insured under a "Life Agents Errors and Omissions Policy" issued by Transamerica. The policy covered "all

---

**2.** In our original withdrawn opinion, we mistakenly described the product as "life insurance policies," when, in fact, South encouraged his

---

Agents, General Agents or Managers" of Phoenix, and provided, in pertinent part:

[Transamerica agrees] to pay on behalf of the INSURED all sums which the INSURED shall become legally obligated to pay as DAMAGES because of:

A. Any act, error or omission of the INSURED, or any person for whose acts the INSURED is legally liable in rendering or failing to render PROFESSIONAL SERVICES for others in the conduct of the NAMED INSURED'S profession as a licensed Life Agent, Broker, General Agent or Manager.

\* \* \*

D. Any actual or alleged failure of a General Agent or Manager covered by this Policy to supervise, manage or train any INSURED.

The coverage was made subject to various exclusions, including the one at issue here:

*XII. Any claim arising out of insolvency, receivership or bankruptcy of any organization (directly or indirectly) in which the INSURED has placed or obtained coverage or in which an INSURED has placed the funds of a client or account.*

(emphasis added). Both South and Domnick were agents of Phoenix covered by the policy.

We have already considered this insolvency exclusion. In *South I*, we held that the exclusion relieved Transamerica of its duty to indemnify South himself against damage claims. *South I*, 975 F.2d at 328. We said: "As was the district court, we are convinced that it is clear and free from doubt that the claims do fall within the exclusion: they arise out of the insolvency of an organization (directly or indirectly) in which the insured placed the funds of a client." *Id.* In this appeal, we are asked to revisit the insolvency exclusion to determine whether Transamerica has a duty to indemnify either Domnick or his agencies for his alleged negligent supervision of South in connection with the sale of the First Columbia annuities.

---

clients to invest in "annuities." *See* 1996 WL 394163, at \*1.

Transamerica filed this action as a declaratory judgment action seeking to define the scope of its coverage of negligent acts committed by Phoenix employees. Transamerica named various defendants, but not Phoenix. Phoenix moved to intervene and filed a counterclaim which mirrored Transamerica's complaint and which requested a declaratory judgment that Transamerica *did* have to indemnify Domnick and his agents with respect to South and the First Columbia annuities. Transamerica moved to dismiss the counterclaim, arguing that Phoenix lacked standing. Phoenix and Transamerica both moved for summary judgment on the coverage issue regarding the insolvency exclusion. The district court denied Transamerica's motion to dismiss, finding that Phoenix had standing, but granted Transamerica's motion for summary judgment, finding that Transamerica did not owe Phoenix a duty to defend or indemnify the investors' suits.

In our first go-around with this appeal, we found that Phoenix had standing in the action below and standing to appeal from the district court's judgment. However, we reversed the district court's decision that Transamerica had no duty to defend or indemnify Domnick. We came to that conclusion primarily because we believed that the first part of the insolvency exclusion was relevant, and that, as required by that part, Domnick was not **"the INSURED"** who "placed or obtained coverage." Rather, we found, unlike *South I*, that the exclusion did not apply to Domnick as it did to South.

Transamerica filed a petition for rehearing on July 30, 1996, in which it pointed out that our original opinion referred to the product South suggested to his clients as "life insurance policies" rather than "annuities." Transamerica, therefore, believed that we should have applied the second part of the insolvency exclusion, which applies to **"an INSURED"** who "placed the funds of a client." Because of the emphasis we had placed in our withdrawn opinion on the definite article "the" versus the indefinite articles "a," "an," and "any," Transamerica believed that, if we were to apply the second part of the exclusion, we would find that *South* was "an INSURED" who placed client funds and, therefore, that Transamerica was relieved from coverage. After Phoenix filed an answer to Transamerica's petition on August 14, 1996, we granted Transamerica's Petition for Rehearing and set the case for reargument. *See* 99 F.3d 216–17 (7th Cir. October 21, 1996). We specifically asked the parties to address (1) whether Transamerica had waived its ability to argue the applicability of the "placed or obtained coverage" language of the exclusion and (2) whether the second part of the insolvency exclusion necessarily applied once we correctly realized that the products we were dealing with were "annuity contracts" and not "insurance policies" and whether there was an ambiguity in the exclusion nonetheless. We now find that Transamerica has not, and could not have, waived its argument, and that the policy unambiguously excludes coverage for Domnick's supervision of South in conjunction with the sales of the First Columbia annuities.

## Analysis

### A. *Standing of Phoenix to Appeal* [3]

The district court both granted Phoenix's petition to intervene as a defendant in Transamerica's original action and found that Phoenix had standing to bring its counterclaim. The standing determination was based on the district court's finding that "Phoenix has paid Domnick's costs of defense and settlement in several lawsuits, and has properly alleged that it is subrogated to Domnick's rights by operation of law and by contract." Dist. Ct. Op. at 3. On appeal, Transamerica does not directly attack those decisions, but challenges Phoenix's standing to appeal the judgment entered below. Transamerica alleges that Phoenix's interest in this litigation is "conjectural and hypothetical," since Phoenix has not shown that it had

**3.** This portion of our initial appeal was not questioned or discussed in either party's brief on rehearing nor was it addressed when the case was reargued. As such, we do not have any cause to alter our conclusion that Phoenix has standing to appeal, and our discussion of the standing issue, authored by Judge Cudahy, remains intact and is reprinted here as it appeared in this panel's withdrawn opinion.

a duty to indemnify Domnick. Thus, Transamerica argues, Phoenix fails to meet the Article III injury-in-fact requirement of an actual or threatened injury which is "concrete and particularized." *See Matter of FedPak Systems, Inc.*, 80 F.3d 207, 212 (7th Cir.1996), citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 2136–37, 119 L.Ed.2d 351 (1992). Phoenix responds that, because Transamerica did not object to Phoenix's original intervention in the case, it has waived its right to object to Phoenix's standing to appeal the judgment below. Alternatively, Phoenix argues that, because it was properly allowed to intervene in the action below and will be bound by the judgment rendered, it fulfills the requirements for standing to appeal.

■ To begin the analysis, we distinguish three distinct but related concepts: intervention pursuant to Federal Rule of Civil Procedure 24; Article III standing to pursue the original controversy; and Article III standing to appeal the judgment below. Phoenix is correct that the issue of intervention has been waived. However, since standing is a jurisdictional matter, this court must determine whether Phoenix had standing to bring its counterclaim and whether Phoenix has standing to pursue this appeal, regardless of Transamerica's waiver.

■ It is well-established that permission to intervene in a district court action does not automatically confer standing to appeal. *Diamond v. Charles*, 476 U.S. 54, 106 S.Ct. 1697, 90 L.Ed.2d 48 (1986). The analysis of standing to appeal focuses on "injury caused by the judgment rather than injury caused by the underlying facts.... [S]tanding to appeal is recognized if the appellant can shown an adverse effect of the judgment." 15A Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3902. Thus even a party who has properly intervened in a case may not appeal a judgment from which he or she suffers no adverse effects.

The relationship between the Rule 24 requirements for intervention and the constitutional test for standing to pursue the original action is more murky. The issue "[w]hether one who lacks standing in her own right may intervene in litigation that is a 'case' or 'controversy' by virtue of concrete disputes among other persons," *Moy v. Cowen*, 958 F.2d 168, 170 (7th Cir.1992), is unsettled in this circuit and has been expressly held open by the Supreme Court, *Diamond*, 476 U.S. at 68–69, 106 S.Ct. at 1706–07, as well. *See also Bethune Plaza, Inc. v. Lumpkin*, 863 F.2d 525, 531 (7th Cir.1988).[4]

It is thus perhaps conceivable that a person lacking standing to bring suit below, yet properly permitted to intervene, might have standing to appeal a judgment which adversely affected him or her.

■ As it turns out, we may once again postpone resolving these interesting questions to another day. The district court properly found that Phoenix had standing to bring its counterclaim. Since the counterclaim raises exactly the same issues as

---

4. Rule 24 recognizes both permissive intervention and intervention as of right. In order to intervene by right a party must demonstrate an interest which is "direct, substantial and legally protectable." *Heyman v. Exchange National Bank of Chicago*, 615 F.2d 1190, 1193 (7th Cir. 1980). Any interest of such magnitude is sufficient to satisfy the Article III standing requirement as well. *Keith v. Daley*, 764 F.2d 1265, 1268 (7th Cir.1985), *cert. denied sub nom. Illinois Pro-Life Coalition, Inc. v. Keith*, 474 U.S. 980, 106 S.Ct. 383, 88 L.Ed.2d 336 (1985) (intervenor must have interest sufficient for "right to maintain a claim for the relief sought"); *United States v. 36.96 Acres of Land*, 754 F.2d 855, 859 (7th Cir.1985), *cert. denied sub nom. Save the Dunes Council, Inc. v. United States*, 476 U.S. 1108, 106 S.Ct. 1956, 90 L.Ed.2d 364 (1986) ("interest of a proposed intervenor must be greater than the interest sufficient to satisfy the standing requirement"). Thus the open question in this circuit is more precisely stated as whether Article III standing is required for permissive intervention under Rule 24(b). Because permissive intervention is allowed only in the discretion of the district court, which is directed to consider "whether the adjudication will unduly delay or prejudice the adjudication of the rights of the original parties," concerns about the possible ill effects of allowing the intervention of a party without independent Article III standing may not be justified. *Cf. Bethune Plaza, Inc. v. Lumpkin*, 863 F.2d 525, 531 (7th Cir.1988) (expressing concern that intervenors might interfere with settlement possibilities). In any event, here, as is frequently the case, the district court failed to indicate whether intervention was granted permissively or as of right.

Transamerica's claim (as to which Phoenix is defendant-intervenor), Phoenix perforce satisfies the Article III standing requirements respecting that claim as well. Because Phoenix is expressly bound by the adverse judgment rendered on both claims, Phoenix has standing to bring this appeal.

The district judge found that Phoenix has "paid Domnick's costs of defense and settlement in several [state court] lawsuits, and has properly alleged that it is subrogated to Domnick's rights by operation of law and by contract." Dist. Ct. Op. at 3. Transamerica does not contest these findings, nor has it ever contested the allegations supporting them, which are contained in Phoenix's Counterclaim, ¶¶ 23–27, R. 21. Instead, Transamerica focuses on the allegedly "hypothetical" and "conjectural" nature of Phoenix's duty to indemnify Domnick.

Because this case comes to us pursuant to our diversity jurisdiction, we rely on Illinois law in evaluating the Phoenix's assertion that it is subrogated to Domnick. If Phoenix is subrogated to Domnick for liabilities properly the obligation of Transamerica, then Phoenix had Article III standing in the lower court and has standing to pursue its appeal in this court. Under Illinois law, "the doctrine of subrogation is broad enough to include every instance in which one person, not a mere volunteer, pays a debt for which another is primarily liable and which in equity and good conscience should have been discharged by the latter." *American Nat'l Bank and Trust Co. of Chicago v. Weyerhaeuser Co.*, 692 F.2d 455, 460 (7th Cir.1982), citing *Bost v. Paulson's Enterprises, Inc.*, 36 Ill.App.3d 135, 343 N.E.2d 168 (2 Dist.1976); *King v. King*, 57 Ill.App.3d 423, 15 Ill.Dec. 43, 373 N.E.2d 313 (2 Dist.1978); *Dworak v. Tempel*, 17 Ill.2d 181, 161 N.E.2d 258 (1959). The record contains the undisputed affidavit of James J. Gadrowski, counsel for Phoenix, that "Domnick has made a demand on Phoenix that it indemnify him for all losses, costs and expenses incurred in his defense of the State Court Actions." para. 12 Gadrowski Aff., R. 13. Further, Phoenix alleges in its counterclaim that it has already paid the costs and expenses of some of those actions. para. 24, R. 21. Even apart from Phoenix's

assertion that it is subrogated to Domnick by contract, the fact that Phoenix has purportedly already paid some of the charges that it argues should have been paid by Transamerica is a sufficient allegation of common law subrogation, unless Phoenix acted as a "mere volunteer" in doing so.

■ The general rule is that "anyone who is under no legal obligation or liability to pay the debt, is ... a mere volunteer." *Weyerhaeuser*, 692 F.2d at 463. Consistent with Illinois policy favoring subrogation, Illinois courts interpret the requirement of "legal obligation or liability" generously, including potential liability within its scope. "[T]he potential for legal liability to the subrogor, as well as the disruption of normal relations and the frustration of reasonable expectations can, in many cases, supply sufficient compulsion to support subrogation." *Id.* Here, Phoenix had been subjected to a formal demand that it indemnify Domnick against liability in the state court actions stemming from the Columbia Life mishap and has paid out funds in response to that potential liability. Thus, Phoenix was not a mere volunteer in making payments on Domnick's behalf.

Transamerica cites three cases in support of its argument that, because Phoenix holds only an "indirectly pecuniary" interest in the case, Phoenix did not suffer injury from the judgment sufficient to confer standing to appeal. None of these cases was in a procedural posture comparable to that presented here. Two of the cited cases involved parties seeking to appeal judgments rendered against others. *Evanston Insurance Co. v. Fred A. Tucker & Co., Inc.*, 872 F.2d 278, 280 (9th Cir.1989) (the underlying declaratory judgment order "did not resolve claims by or against [the parties seeking to appeal]; the judgment did not mention them."); *Libby, McNeill, and Libby v. City National Bank*, 592 F.2d 504 (9th Cir.1979) (similarly involving an attempt by a party to appeal a judgment which had been entered against someone else). The third case involved an attempt by an insurer to intervene, not in an action to determine the scope of insurance coverage, but in the underlying liability determination. *Travelers Indemnity Co. v. Dingwell*, 884 F.2d 629 (1st Cir.1989). *Trav-*

*elers Indemnity* did not present an issue of standing, but was decided under Rule 24. Further, the court specifically suggested that "the proper place to raise [the coverage issues] is during an action to determine whether the claim is covered by the policy." *Id.* at 639–40.

The present declaratory judgment action *is*, of course, intended to determine the scope of coverage of the policy, rather than to resolve any underlying liability questions. Additionally, the declaratory judgment order explicitly rendered judgment against Phoenix. The judgment resolved not only the claims in which Phoenix was an intervenor-defendant, but also Phoenix's counterclaim against Transamerica and would certainly have preclusive effect in any attempt by Phoenix to recover from Transamerica at a later date for its payment of Domnick's liabilities and litigation expenses.

Thus, because Phoenix alleged an interest in the matter sufficient for Article III standing in the district court and because it has been aggrieved by the judgment entered against it, Phoenix has standing to bring this appeal.

### B. *The Insolvency Exclusion*

■ Under Illinois law, the construction of an insurance policy is a question of law to be decided by the court. *South I*, 975 F.2d at 327 (citations omitted). When an exclusionary clause is relied upon to deny coverage, its applicability must be clear and free from doubt. *Id.* (citations omitted). If there is an ambiguity, it should be construed in favor of the insured, but courts will not create an ambiguity where one does not exist—if a provision is clear and unambiguous, it will be applied as written. *Id.*

■ Our opinion in *South I* turned on the phrase in the exclusion, "arising out of insolvency," and relied on tort law principles of proximate cause. As Judge Cudahy noted in our withdrawn opinion, however:

At the time of that earlier opinion, Illinois case law on the interpretation of insurance exclusions was confusing, with disparate results reached in similar cases. Since that time, Illinois law has been clarified

immensely by two recent Illinois appellate court decisions. *Oakley Transport, Inc. v. Zurich Insurance Co.*, 271 Ill.App.3d 716, 208 Ill.Dec. 177, 648 N.E.2d 1099 (1 Dist. 1995); *Allstate Insurance Co. v. Smiley*, 276 Ill.App.3d 971, 213 Ill.Dec. 698, 659 N.E.2d 1345 (2 Dist.1995). We believe the approach of these courts is likely to be followed by the Illinois Supreme Court. These two cases conclude that the importation of tort principles of proximate cause into the construction of insurance policies is inappropriate. Rather, they suggest, policies should be interpreted in accordance with contract principles, so as to give effect to the intent of the parties. Therefore, policies should be construed according to the plain meaning of the terms used.

Keeping in mind the fact that we will construe policies according to their plain meaning, as well as the fact that we are dealing with annuities, we conclude that the insolvency exclusion unambiguously relieves Transamerica of any duty to defend or indemnify Domnick or his agencies for South's conduct with regard to Columbia Life.

First, as Judge Cudahy concluded in the withdrawn opinion, it is clear that the losses in this case "arise out of the insolvency" of Columbia Life, because the losses would have occurred regardless of whether the legal claim under consideration was South's negligence or Domnick's negligent supervision. Transamerica was correct, Judge Cudahy noted, "that claims of negligent supervision against Domnick 'arise out of' the insolvency of Columbia Life and that negligent supervision claims are in principle covered by the exclusion."

As Transamerica succinctly points out in its petition for rehearing, the exclusion in issue here contains two distinct clauses—it excludes any claim arising out of insolvency of any organization in which (1) "the INSURED has placed or obtained coverage" or in which (2) "an INSURED has placed the funds of a client or account." Because we are dealing with annuities, the second part of the insolvency exclusion dealing with "placing the funds of a client" is the relevant portion which controls this case. Indeed, this is the

part of the exclusion which the district court applied in granting summary judgment for Transamerica, and the district court actually redacted the first part of the exclusion when citing it:

> The insolvency exclusion denied coverage for "XII. [a]ny claim arising out of insolvency, receivership or bankruptcy of any organization (directly or indirectly) . . . in which an INSURED has placed the funds of a client or account."

The district court, in fact, did not even quote the first clause of the exclusion dealing with "plac[ing] or obtaining cover[age]."

Like the district court, we must determine whether *an* insured placed the funds of a client or account. The answer is "yes." In *South I,* we did not have to address this question directly; the claims there were against South, who clearly was not only *an* insured, but *the* insured, and he obviously "placed the funds of a client" in Columbia Life. It is true, as Judge Cudahy noted in the withdrawn opinion, that Domnick, in contrast to South, never "placed or obtained coverage" in Columbia Life for anyone. However, an insured under the policy (South) did "place the funds of a client" in Columbia Life. The use of the indefinite article "an" in the second portion of the insolvency exclusion makes it clear that the drafters of the policy did not intend that portion to apply *only* to the particular insured against whom legal claims have been brought. Rather, by using the indefinite article "an," the drafters intended that portion of the exclusion to apply to one insured who fails to or negligently supervises another insured, i.e., Domnick. As Judge Cudahy noted in the withdrawn opinion, several cases have already established the distinction, under Illinois law, between the use of the indefinite article "a," "an," or "any" to modify "insured" and the use of the definite article "the" to modify "the insured." *See Thoele v. Aetna Cas. & Surety,* 39 F.3d 724, 727 (7th Cir.1994) ("[T]he choice of the word 'any' broadened the exclusion to include injuries triggered by one insured in connection with the business pursuit of another."); *Smiley,* 213 Ill.Dec. at 705–06, 659 N.E.2d at 1352–53 ("[U]se of the term 'the insured' in an exclusionary clause is meant to refer to a definite, specific insured"). Given the clear distinction that should be drawn by the use of the indefinite article "an," we think it is clear that the exclusion does apply to claims of negligent supervision against Domnick which resulted from South's placement of clients' funds in the Columbia Life annuities.

The best argument Phoenix can make at this point is that Transamerica has waived the argument that the second part of the policy should apply, rather than the first. Phoenix contends that Transamerica argued exclusively that Domnick could fit under the first part of the exclusion. This argument fails for two reasons. First, Chief Judge Posner's recent comments on waiver foreclose the argument: "We certainly agree that the failure of an *appellee* to have raised all possible alternative grounds for affirming the district court's original decision, unlike an appellant's failure to raise all possible grounds for reversal, *should not operate as a waiver.* The urging of alternative grounds for affirmance is a privilege rather than a duty." *Schering Corp. v. Illinois Antibiotics Co.,* 89 F.3d 357, 358 (7th Cir.1996) (emphasis added). Moreover, it is not entirely clear that Transamerica did, in fact, fail to argue that the second part should not apply. In referring to the exclusion, Transamerica always cited and referred to the insolvency exclusion in its entirety, not merely the first clause or the "placed or obtained coverage" language. In addition, Transamerica relied heavily on this Court's opinion in *South I* both in the initial appeal and on rehearing, which, we said above, based its holding on the "placed the funds of a client" language to relieve Transamerica from its coverage duties. While it is true that in its brief in the initial appeal, Transamerica did argue that Domnick could be construed as "*the* INSURED," Transamerica also argued that Domnick should be construed as the insured who helped in the *placement of client funds.* Transamerica contended:

> First, any "negligent supervision" theory presumes involvement in the *placement of the investor-claimants* [sic] *funds* with First Columbia. A negligent supervisor is liable for his role in the *placement of such funds.* Accordingly, Domnick could be

construed as "the INSURED" within the insolvency exclusion.

This argument makes it at best unclear as to which part of the exclusion Transamerica relied on—it is true that the quote refers to "the" insured, but it also refers to the "placement of funds." As such, we are not convinced that Transamerica failed to argue the applicability of the second part of the exclusion prior to its petition for rehearing. Therefore, even if Transamerica could have waived this argument, we do not believe that it did.

### Conclusion

We AFFIRM the determination that Phoenix has standing to bring this appeal. As to the merits, the clear and unambiguous language of the insolvency exclusion relieves Transamerica from defending or indemnifying Domnick against any claims arising out of South's placement of client funds with First Columbia. Transamerica has not, and could not have, waived its argument that the second part of the insolvency exclusion applies. We also, therefore, AFFIRM the district court's grant of summary judgment in favor of Transamerica and against Phoenix.

CUDAHY, Circuit Judge, dissenting:

"A little neglect may breed mischief ... for want of a nail the shoe was lost; for want of a shoe the horse was lost; and for want of a horse the rider was lost."[1]

In this case, my mis-speaking of "insurance policies" instead of "annuities" in the original opinion is the lost nail. The resulting lost rider is apparently the Phoenix Home Life Mutual Insurance Company. The mistaken reference to "insurance policies" instead of to their close relative, "annuities," opened the door for Transamerica to make an extraordinarily convenient argument in its petition for rehearing. It was a brand-new argument (never made in the district court or on appeal) but nonetheless just the thing for attacking an opinion that mislabeled "annuities" as their cousin, "insurance policies." For on rehearing, Transamerica contended that only the "placed the funds of a client" branch of the exclusion applied to annuities.

By necessary implication, the "placed or obtained coverage" branch must apply only to insurance policies. The majority has adopted this convenient, but waived and erroneous, basis for deciding the case on rehearing.

Briefly, with respect to waiver, of course a judgment may be affirmed on any ground *raised in the district court,* even if the appellee fails to argue that ground on appeal. *See, e.g.,* 5 C.J.S. *Appeal and Error* § 716 (1993); 5 AM.JUR.2D *Appellate Review* §§ 828, 829 (1995) ("An appellate court may affirm a judgment on any ground that is properly raised below."). But the majority does not, and cannot, claim that its ground for decision was raised and considered by the district court, nor, of course, was it raised on appeal. There is the further and even more serious problem here that bifurcation of the exclusion between insurance policies and annuities is not an unargued ground for affirmance *on appeal* but a new ground specially introduced to support *a rehearing petition.* This is certainly out of bounds. *See, e.g., Board of Election Comm'rs of Chicago v. Libertarian Party of Illinois,* 591 F.2d 22, 25 n. 5 (7th Cir.1979) ("new arguments are not entertained for the first time on rehearing").

Aside from waiver, the language of the exclusion does not support the surmise that "placed or obtained coverage" was intended to apply only to insurance policies while "placed the funds of a client" was intended to apply to annuities. The only hint of this is that "coverage" is often associated with "risk" and therefore with "insurance." But this is only a hint. The majority has offered no authority or analysis supporting its basic contention that the two branches of the exclusion must apply to different categories of contracts. For the language does not support this dichotomy, and it could easily have been established by clear language—perhaps even containing the words "annuities" and "insurance policies."

Even if the language were more supportive of the majority position, the majority has offered no possible reason why the exclusion would extend only to placement by specific

1. Maxims ... *prefixed to Benjamin Franklin's*  Poor Richard's Almanac.

insureds in the case of insurance policies but would extend to placement by *all* insureds in the case of annuities. This distinction between categories of contracts is not only unsupported by the language but is equally unsupported by logic or reason. The claimed distinction is irrational.

I would therefore reverse the district court judgment and hold that the exclusion does not apply. Based on principles of waiver, the new arguments on rehearing should be disregarded and the conclusions reached on the original appeal should be reaffirmed. Those conclusions were based on the issues as presented by the parties, were unanimously accepted by the panel and were unaffected by the misnaming of "annuities" as "insurance policies."

If the principles of waiver are disregarded, it is unclear which branch of the exclusion applies, and the exclusion is ambiguous. It should therefore be construed against the drafter, Transamerica, and in favor of Phoenix—the same result as reached by the original opinion.

It would be possible to pursue the foregoing and related arguments at greater length but the majority opinion already contains a lot of my material (by permission of course). I certainly have no quarrel with what is graciously attributed to me, but I must respectfully dissent from the conclusions reached thereafter.