In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 16-4072

CAUDILL SEED & WAREHOUSE CO., INC.,

*Plaintiff-Appellee,*

*v.*

MARK D. ROSE,

*Defendant,*

*and*

MMR FARMS LLC,

*Third-Party Appellant.*

———————

Appeal from the United States District Court for the
Southern District of Indiana, New Albany Division.
No. 4:15-cv-00004-TWP-TAB — **Tanya Walton Pratt**, *Judge.*

———————

ARGUED APRIL 10, 2017 — DECIDED AUGUST 18, 2017

———————

Before EASTERBROOK, ROVNER, and SYKES, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Between 2007 and 2009 Rose Seeding & Sodding, Inc., bought more than $120,000 of products on credit from Caudill Seed & Warehouse Co.; Mark Rose, the principal owner and manager of Rose Seed-

ing, personally guaranteed the debt. Neither Rose Seeding nor Rose paid any of the debt, and after cutting off deliveries Caudill Seed filed suit. While the litigation proceeded, Rose set out to become judgment-proof. By the time a district court ruled for Caudill Seed, see *Caudill Seed & Warehouse Co. v. Rose Seeding & Sodding, Inc.*, 764 F. Supp. 2d 1022 (S.D. Ind. 2010), Rose had given 440 acres of land to MMR Farms LLC, owned by his son Matt. This was a classic fraudulent conveyance: a transfer for inadequate consideration (none) while unable to pay one's debts. Rose followed up by filing for bankruptcy in 2011, having paid not one penny of Caudill Seed's judgment (then over $150,000, including contractual attorneys' fees, and growing at 8% interest).

Caudill Seed began an adversary proceeding in Rose's bankruptcy and asked the judge to pull the 440 acres into the estate under 11 U.S.C. §548. The bankruptcy trustee made a similar request, which was settled for a payment of $100,000. The bankruptcy judge approved that settlement over Caudill Seed's objection. Caudill Seed then asked the judge to deny Rose a discharge. Section 727(a)(2) of the Bankruptcy Code provides that a debtor who transferred property, during the year before bankruptcy began, with the intent to defeat a creditor's recovery, is not entitled to a discharge.

The bankruptcy judge granted Caudill Seed's motion, and that decision led to a second settlement. To get a discharge, Rose reaffirmed his debt to Caudill Seed. He promised to pay it $100,000, starting with an immediate $15,000. The agreement adds that failure to pay the full $100,000 entitles Caudill Seed to a judgment for $300,000 (less anything paid toward the $100,000). This reaffirmation agreement led

the bankruptcy judge to discharge Rose's remaining debts, other than the debt under the new agreement.

Rose paid the first installment of $15,000 but nothing more. Caudill Seed might have asked the bankruptcy judge to rescind the discharge on the ground that Rose was still attempting to bilk his creditors. Instead, however, Caudill Seed filed a new suit (under the diversity jurisdiction) based on the reaffirmation agreement. Rose ignored that suit, and a default judgment for $285,000 was entered. Predictably, Rose failed to pay. It's not that he paid what he could but was unable to satisfy the judgment; it is that he thumbed his nose at Caudill Seed and the federal court, paying nothing at all.

Next Caudill Seed commenced supplemental collection proceedings. These depend on state law, see Fed. R. Civ. P. 69(a)(1), and Caudill Seed contended that, under Indiana law, it is entitled to execute on the land that had been fraudulently conveyed to MMR Farms. That got Rose's attention, and MMR's too. They do not deny that the transfer was a fraudulent conveyance, but they insist that the settlement of the Trustee's claim in the bankruptcy precludes any further action to collect Rose's debts from the value of the 440 acres. Rose and MMR maintained that the settlement establishes a kind of issue preclusion that blocks recovery.

The district court rejected that argument, observing that issue preclusion depends on an actual decision, by a judge, that is necessary to the earlier litigation. 2016 U.S. Dist. LEXIS 153204 (S.D. Ind. Nov. 4, 2016). MMR has appealed; Rose has not. (Matt Rose also purports to appeal, but he was not a party in the district court.)

We agree with the district court's conclusion. As the American Law Institute puts it: "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Restatement (Second) of Judgments* §27 (1982) (blackletter text). Whether the transfer of the 440 acres was a fraudulent conveyance was not actually litigated and decided in the bankruptcy. Instead the Trustee's claim was settled. There was no judicial decision other than one approving the settlement—which the judge did on the ground that creditors were $100,000 to the good. The decision to approve the settlement does not resolve the question whether a fraudulent conveyance occurred. The closest the bankruptcy court came to resolving the subject was the decision *in Caudill Seed's favor* denying Rose a discharge under §727(a)(2).

A litigant who invokes a settlement is not relying on issue preclusion. The appropriate legal defense is release. When approving the settlement, the bankruptcy judge twice used the word "release"; it follows from this, MMR maintains, that any fraudulent-conveyance action has been released by the Trustee—and as the Trustee represented all of the bankruptcy estate's creditors, the release would bind Caudill Seed. That's possible, of course, but it sure would help to see the document to learn what, exactly, was released. Yet MMR did not quote the release or include it in the appellate record.

We did a little digging and found the bankruptcy judge's order approving the settlement. This order indeed refers to a release—a release *by Rose and MMR Farms* of "any claims

that he/she/it may have against the Bankruptcy Estate." We did not find the release itself, but if the bankruptcy judge's description is correct then Rose and MMR Farms remain exposed to an order undoing the fraudulent conveyance, just as the district court held.

At oral argument the bench asked counsel for MMR whether it is the recipient, rather than the giver, of a release. Counsel was unable to point to any document in the record that releases MMR from a fraudulent-conveyance action; indeed, counsel conceded that the trustee had *not* released MMR. Four days later, however, counsel sent the court a letter stating that this concession is incorrect and that "after reviewing the file" he discovered a mutual release dated December 2012 in which the Trustee releases Rose and MMR from all known and unknown claims arising out of or related to the fraudulent-conveyance action.

Counsel did not submit a copy of the release with the letter but offered to provide it on request. The proper next step would have been to ask the district court to add this document to the record and transmit it to the court of appeals. That was not done. The asserted release still is not in the record. But it would not have mattered if counsel had added the document to the record or sent it directly to us.

Release is an affirmative defense. Fed. R. Civ. P. 8(c)(1). Affirmative defenses must be raised in a party's responsive pleading. Rose and MMR did not present the defense of release to the district court in this enforcement proceeding; their *only* defense was issue preclusion. So a potential defense of release was forfeited before the proceedings reached this court. Rose and MMR, who concocted a fraudulent transfer, tried to stiff Rose's creditors, played games with the

bankruptcy court in order to get a discharge without keeping the promise on which the discharge depended, and then thumbed their noses at the proceeding to enforce the reaffirmation agreement, have run out of chances.

AFFIRMED