In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 18-3293

AMERICAN HOMELAND TITLE AGENCY, INC.,
JOHN YONAS, and MARTIN RINK,

*Plaintiffs-Appellants*,

*v.*

STEPHEN W. ROBERTSON,
Commissioner of the
Indiana Department of Insurance,

*Defendant-Appellee*.

_____

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:15-cv-02059-SEB-DML — **Sarah Evans Barker**, *Judge*.

_____

ARGUED APRIL 1, 2019 — DECIDED JULY 15, 2019

_____

Before EASTERBROOK, SYKES, and BRENNAN, *Circuit Judges*.

SYKES, *Circuit Judge*. During a random audit, the Indiana Department of Insurance ("the Department") discovered that American Homeland Title Agency had committed hundreds of regulatory violations. After several rounds of negotiation, American Homeland agreed to pay a fine and

relinquish its licenses. But just a few months later, American Homeland sued the Department's commissioner, Stephen Robertson, for allegedly discriminating against the company because of its out-of-state residency.

We need not reach the merits of that discrimination claim. In its agreement with the Department, American Homeland consented to the same penalties it now challenges. It hasn't provided a valid reason to void that agreement, so judicial review is unavailable. We therefore affirm summary judgment in favor of Robertson.

## I. Background

American Homeland Title Agency is a Cincinnati-based company that performs title searches and sells title insurance. Its owners are John Yonas and Martin Rink, both of whom are attorneys. In 2015 the Department randomly audited American Homeland's files and found hundreds of code violations, none of which American Homeland denies.

The Department's examiners recommended that the Commissioner fine American Homeland $70,082 and order $42,202 in consumer reimbursements. To calculate those penalties, the examiners started with what their guidelines recommended but then deviated upward. The guidelines are fully advisory, so everyone agrees that the examiners had the discretion to do so.

The parties then went through several rounds of negotiation. But not only did the examiners refuse to adjust the fines, they added a new sanction: Yonas and Rink would lose their licenses to do business in Indiana. Later, one of the Department's attorneys informed American Homeland that if it refused to agree to the penalties, it could seek adminis-

trative review. But if American Homeland did that, it could face the maximum fine of $9.5 million. Fearing that exposure, American Homeland agreed to the recommended sanctions.

After the Commissioner's approval, the parties signed the "Agreed Entry." American Homeland accepted the penalties and "voluntarily and freely waive[d] the right to judicial review of th[e] matter." After settling the dispute, American Homeland paid the fees, and Yonas and Rink gave up their licenses.

A few months later, American Homeland sued Commissioner Robertson. The complaint alleged that the Department imposed higher penalties because American Homeland is based in Ohio, not Indiana. American Homeland initially contended that this disparate treatment violated the Constitution's Commerce and Equal Protection Clauses. But as everyone now agrees, "the McCarran-Ferguson Act exempts the insurance industry from Commerce Clause restrictions." *Metro. Life Ins. Co. v. Ward*, 470 U.S. 869, 880 (1985); *see* 15 U.S.C. §§ 1011–1015. Still, the McCarran-Ferguson Act "does not purport to limit in any way the applicability of the Equal Protection Clause." *Metro. Life Ins.*, 470 U.S. at 880 (striking down, under rational-basis scrutiny, a tax regime that favored in-state insurers). So American Homeland's second claim proceeded.

American Homeland's equal-protection case rests on three pieces of evidence. First, the company offers the expert testimony of Dr. Daniel Voss, who conducted a statistical analysis and found that when the Department audits out-of-state companies, it tends to deviate more from its guidelines than when it audits in-state companies. Second, American

Homeland points to a stray comment that a Department examiner made during a recorded phone call while negotiating the penalties. When Yonas and Rink insisted that the sanctions would put them out of business, the examiner said, "[P]lease understand if you … guys aren't writing this business in Indiana[,] people in Indiana would probably be writing it." Third, American Homeland emphasizes that Robertson was unable to say definitively during his deposition that no one in his department was motivated by in-state bias—though he did say that he himself would never consider that factor.

If the case were to go to trial, American Homeland would seek three kinds of relief. First, it asks for damages. The complaint is somewhat unclear, but the company presumably wants to be reimbursed for whatever amount it overpaid because of its out-of-state residency. Second, it wants an injunction ordering that the licenses be reinstated. And third, it wants a declaratory judgment stating that the Agreed Entry violates the Equal Protection Clause. In short, it wants a court to undo the settlement agreement.

The district judge entered summary judgment for Robertson. She did not think that the Agreed Entry precluded judicial review altogether, but she held that American Homeland did not have enough evidence on the merits to survive summary judgment. First, she excluded Dr. Voss's testimony under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Then she determined that the remaining evidence—the examiner's stray remark and Robertson's deposition testimony—was insufficient to create a genuine dispute of material fact. She entered judgment, and American Homeland now appeals.

## II. Discussion

We review a summary judgment de novo. *See Kopplin v. Wis. Cent. Ltd.*, 914 F.3d 1099, 1102 (7th Cir. 2019). In doing so we may affirm "on any ground supported in the record, so long as that ground was adequately addressed in the district court and the nonmoving party had an opportunity to contest the issue." *Cardoso v. Robert Bosch Corp.*, 427 F.3d 429, 432 (7th Cir. 2005).

Our first and only question is whether the Agreed Entry bars judicial review. We note, however, that this is not a question of constitutional standing. Commissioner Robertson has consistently argued that American Homeland lacks standing because its injuries are not redressable in light of the settlement. While we agree that the Agreed Entry bars review, we disagree with that characterization.

The standing doctrine addresses whether a court has the power to hear a case under Article III of the Constitution. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). It is therefore jurisdictional. *See Transamerica Ins. Co. v. South*, 125 F.3d 392, 396 (7th Cir. 1997). In contrast, the fact that a plaintiff already released his claims through settlement is an affirmative defense that may be waived. *See Caudill Seed & Warehouse Co. v. Rose*, 868 F.3d 558, 560–61 (7th Cir. 2017); FED. R. CIV. P. 8(c).

In this case, American Homeland has satisfied each of the required elements of standing. *See Lujan*, 504 U.S. at 560–61 (requiring that a plaintiff show a concrete injury in fact that is fairly traceable to the defendant and that a favorable decision would redress). The company claims that it received inappropriately severe penalties. If true, that is an

injury in fact traceable to the Department's conduct. And the remedies at issue—damages and an order to restore the licenses—would unquestionably redress that wrong. So standing is not the problem.

Still, the relevant question remains the same: Did American Homeland release these claims when it signed the Agreed Entry? When a party settles a disciplinary matter with an agency, the "consent decree or order is to be construed for enforcement purposes basically as a contract." *United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 238 (1975). More specifically, "[i]ssues regarding the formation, construction, and enforceability of a settlement agreement are governed by local contract law." *Pohl v. United Airlines, Inc.*, 213 F.3d 336, 338 (7th Cir. 2000). So in this case, Indiana contract law applies.

Under the plain terms of its agreement, American Homeland accepted the penalties now at issue and waived its right to judicial review. Yet this lawsuit is nothing more than an attempt to use judicial review to unwind those penalties. Indeed, each of the requested remedies is directly keyed to undoing some sanction imposed by the agreement—namely, the size of the monetary penalty and the revocation of the licenses. Nothing else is at stake.[1]

---

[1] In fairness, American Homeland briefly argues that it also seeks damages for a reputational harm, but it has never explained exactly how it suffered that kind of harm here. Likewise, it also asks for a broader injunction ordering the Department to stop discriminating against other firms. But that would do nothing to remedy American Homeland's own injury, so it can't be enough to sustain this lawsuit. To hold otherwise *would* present standing problems. *See Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 479 (1990) (explaining that for standing purposes, the question is not

In response American Homeland offers two reasons not to enforce the Agreed Entry as written: duress and the existence of unconstitutional bias. Neither has any merit. As for duress, American Homeland argues that if it hadn't signed the agreement, it would have run the risk of facing a much higher penalty—anything up to the maximum penalty of $9.5 million. That is plainly insufficient to constitute duress under Indiana law:

> In order to avoid a contract on the basis of duress, there must be an actual or threatened violence of restraint of a man's person contrary to law[] to compel him to enter into a contract or discharge one. In deciding whether a person signed a document under duress, the ultimate fact to be determined is whether or not the purported victim was deprived of the free exercise of his own will.

*Wagler v. W. Boggs Sewer Dist., Inc.*, 980 N.E.2d 363, 378 (Ind. Ct. App. 2012) (citations, quotation marks, and alteration omitted). Here, there was no threat of violence. In fact, it's not clear there was any threat at all. The Department's lawyer appears to have simply informed American Homeland that if it sought administrative review, the penalty could go as high as $9.5 million. The attorney did no more than explain the law. That isn't the kind of coercion that suffices to void a contract. After all, most consent decrees involve the payment of a smaller sum in lieu of litigating the

what the relief does for "the world at large" but whether the plaintiff "has a stake in that relief").

full amount at issue. Under American Homeland's view of duress, no settlement negotiation could survive.

American Homeland's second argument for voiding the Agreed Entry is that its terms were the result of unconstitutional bias. But none of the cases it cites explain under what circumstances an equal-protection claim voids a settlement agreement. Under some circumstances Indiana does, like most states, void contracts on illegality grounds. But the doctrine of illegality does not apply here. It typically applies when a statute prohibits the formation of a particular type of contract or when the performance of a contract would require an illegal act. *See Hogston v. Bell*, 112 N.E. 883, 888 (Ind. 1916) ("[A] contract is not void as against public policy [on the basis of its illegality] unless the contract itself … is forbidden by law, or its consideration is illegal or immoral.").

To give an example, an Indiana statute once specifically voided agreements between students and unaccredited postsecondary educational institutions. *See Cont'l Basketball Ass'n, Inc. v. Ellenstein Enters., Inc.*, 669 N.E.2d 134, 140 n.10 (Ind. 1996) (citing the since-repealed IND. CODE § 20-1-19-19). Likewise, Indiana has outlawed both prostitution and gambling, so contracts involving either are generally void. *See Glasgo v. Glasgo*, 410 N.E.2d 1325, 1331 (Ind. Ct. App. 1980) ("Our most recent criminal code … does still proscribe acts of prostitution … . Thus, any contract in which sexual services serve as consideration are unenforceable and void … ."); *Auman v. Fabiano*, 132 F. Supp. 353, 353 (N.D. Ind. 1955) (holding that a contact involving gambling is not enforceable unless the claim "can be wholly disconnected from the illegal transaction"). But because Indiana "value[s]

the freedom to contract so highly," it will void a contract on illegality grounds only in rare cases. *See Cont'l Basketball Ass'n, Inc.*, 669 N.E.2d at 140. In the case before us, the doctrine simply does not apply. American Homeland claims that the Department was impermissibly biased, but nothing makes it illegal to enter an ordinary consent decree; nor would performance of this contract require any illegal conduct.

Moreover, American Homeland hasn't even alleged that there is anything wrong with the provision at issue: the waiver of judicial review. American Homeland wants a jury to find that the *penalty provisions* were unconstitutionally severe; it does not argue that the *waiver* itself was unlawful. And according to that provision, we can't inquire into the terms of the agreement at all.

American Homeland tried a new approach at oral argument. It analogized this case to the plight of a criminal defendant who challenges his sentence after entering a plea bargain. If anything, the analogy hurts American Homeland's case. When a criminal defendant waives appellate review of his plea bargain, we will generally enforce that waiver. *See United States v. Jones*, 381 F.3d 615, 619 (7th Cir. 2004) ("A defendant may waive his appeal rights as part of a plea agreement, provided the waiver is clear and unambiguous."); *see also United States v. Hallahan*, 756 F.3d 962, 971 (7th Cir. 2014) ("A knowing and voluntary appeal waiver precludes appellate review."). Even more relevant, a criminal defendant can waive the right to challenge the severity of his punishment. *See Jones*, 381 F.3d at 619 ("Jones explicitly waived his right to appeal his sentence. And, as established above, he knowingly and voluntarily signed the plea agree-

ment and pled guilty. The fact that he is unhappy with his ultimate sentence does not undo his acquiescence."). American Homeland's analogy shows only that it is asking for a degree of leniency that even a criminal defendant doesn't receive.

In sum, American Homeland has offered no meaningful reason to ignore the Agreed Entry. Because the company waived its right to judicial review of the penalties, its claims are foreclosed. As a result, we need not reach the merits of American Homeland's equal-protection claim.

AFFIRMED